DALE *et al.*, commissioners, *v.* BARNETT.

1. The rebuilding of a bridge which was a part of a system of public roads in a county is a matter that is left to the discretion of the county authorities, and this discretion will not be controlled unless it is abused.

2. The record in the present case showing that the two bridges in question were a part of the same public road and both necessary in order to complete it as such, and that one of them has been destroyed for more than twenty years, and the other for a number of years, and the action of the county commissioners from time to time on the question of rebuilding showing a practical abandonment and abolition of the bridges as a part of the public-road system of the county, the county authorities did not abuse their discretion in refusing to rebuild the same, and it was error in the judge of the superior court to grant a mandamus absolute compelling the erection of the bridges.

Argued June 9, — Decided July 26, 1898.

Mandamus. Before Judge Falligant. Chatham superior court. December term, 1897.

*J. R. Saussy,* for plaintiffs in error.
*Charlton, Mackall & Anderson,* contra.

COBB, J.   An application was made for mandamus against
the commissioners of Chatham county, to require them to con-
struct and restore a bridge across the Skidaway river connect-
ing the Isle of Hope with Long Island, and a bridge across Skid-
away Narrows connecting Long Island with Skidaway Island.
The acts of the General Assembly bearing upon the questions in-
volved in this proceeding, and which are hereinafter referred to
in the synopsis of the petition and answer, were as follows:   By
an act approved December 26, 1831, it was declared, that "it
shall and may be lawful for the planters and inhabitants of the
Island of Skidaway, in the county of Chatham, to erect, at their
own expense, a bridge for the purpose of connecting the said
Island with the mainland, provided the same is executed with
the consent of the commissioners of the roads in said county
aforesaid;" and that "the said bridge shall be deemed a public
way free for all persons travelling over the same."   Acts 1831,
p. 78.   On October 17, 1870, an act was passed which was enti-
tled, "an act to make the roads and bridges from the Isle of
Hope, across Long Island to the main road on Skidaway Island,
in the county of Chatham, a part of the public roads, in con-
formity with the act assented to December 26, 1831."   By this
act it was declared, that "the bridges having been built, and the
right of way secured from the Isle of Hope to the main road on
the Skidaway Island, from the year 1858 till the present time,
the roads and bridges are now declared a part of the public roads
of Chatham county."   Acts 1870, p. 453.   On December 13,
1871, an act was approved, which in its preamble recited that
it was supposed that the act of 1870, quoted above, deprived the
local authorities of Chatham county of the right to abolish, al-
ter, or change the road referred to in such act; and provided that
the persons having control of such matters were "authorized and
empowered to abolish, alter, or change the said roads and bridges
from the Isle of Hope, across Long Island, to the main road on
Skidaway Island, in the county of Chatham, as if the said act,
approved October 17th, 1870, had not been passed."   Acts 1871,

p. 242. The petition alleged, in substance: Petitioner is a cit-izen of this State, having his place of residence in Chatham county. The commissioners of Chatham county are charged with such public duties in regard to the county of Chatham as were prior to the year 1873 performed by the ordinary. On October 17, 1870, the legislature passed an act [the substance of which is set forth above]. At the time of the passage of the act, the ordinary, being vested with jurisdiction over such matters, took charge of the said roads and bridges and maintained the same as a part of the public-road system of the county. Prior to this time the roads and bridges had been maintained at the expense of the citizens of the county having large interests upon Skidaway Island. In consequence of storm, decay, and neglect, the bridge across the Skidaway river, forming a part of said road and connecting the Isle of Hope with Long Island, and the bridge across the Skidaway Narrows connecting Long Island with Skidaway Island, also forming a part of the road referred to in the act of 1870, have become utterly destroyed. The pe-titioner and a number of other citizens of the county have de-manded that the defendants discharge their public duty in this respect and restore the bridges, but the defendants have declined to do so.

The defendants filed an answer, in which they admitted that the bridge across the Skidaway river connecting the island of Skidaway with the mainland had been destroyed in consequence of storm, decay, and failure to keep it in repair, and that they had refused to rebuild it; but they alleged, upon information and belief, that it had been destroyed at or before the passage of the act of 1870, and never existed as one of the public bridges of the county. They contended that the act of the legislature passed December 26, 1831, which authorized the building of the bridge connecting Skidaway Island with the mainland, con-ferred this right specially upon the planters and inhabitants of the island, and required it to be built at their expense; and the bridge was accepted as a part of the public-road system of the county by the board of public road commissioners with the same proviso that the county should be under no obligation, even as to annual repairs, or at the expense of rebuilding the bridge at any

time; that the act of 1870 does not impose on the county the expense of rebuilding the bridge, but only confirms the action of the public road commissioners above referred to; that this act was virtually repealed by the act of 1871, and the county authorities having jurisdiction over the public roads and bridges virtually abolished said bridge as a public bridge, if it had ever been a public bridge of the character which imposes on the county the obligation to repair; that the mature and well-considered judgment of the defendants and their predecessors having jurisdiction over the public roads and bridges is, that this bridge is not of sufficient public utility to authorize the expenditure of so large an amount of public money for the convenience of a few individuals composing the planters and residents of the island, there being ample facilities for communicating with the island by water, and the usual and customary mode of communication having been for many years by water, in boats; that the power to establish or abolish the bridge, if a public bridge, being in the exclusive jurisdiction of the defendants, the court should not interfere with such jurisdiction by mandamus; and that no bridge connecting the mainland and the island having existed for more than twenty years, its discontinuance for so long a period is conclusive evidence that if it was ever a public bridge duly established by law, with the obligation on the county authorities to rebuild, it has been abolished by the authorities having jurisdiction.

A mandamus nisi was granted, and at the final hearing the case was by consent heard by the judge without a jury, who adjudged that the mandamus be made absolute; and to this the defendants excepted.

1. By an act approved February 21, 1873, a body styled "commissioners of Chatham county and ex officio judges" was created and given jurisdiction of sundry matters connected with the affairs of that county. It was in this act provided that "said commissioners and ex officio judges in and for the county of Chatham shall have the same jurisdiction, to the exclusion of the ordinary of said county, as is exercised by said ordinary when sitting for county purposes." Acts 1873, p. 235. Whatever power is conferred by the general law of the State upon the

. ordinary is thus conferred upon the body created by this act. . The code provides that "the ordinary, when sitting for county . purposes, has original and exclusive jurisdiction" over certain . subject-matters therein enumerated, among them being the following: "In establishing, altering or abolishing all roads, bridges and ferries, in conformity to law." In the case of *Patterson* v. *Taylor*, 98 *Ga.* 646, it was held, that, under the section . quoted, the matter of establishing bridges was one vested in the ordinary, to be exercised in his discretion, and that no recommendation of the grand jury could deprive him of the right to . exercise his discretion; and that consequently a mandamus would not be granted to compel him to have a bridge built. . That case was dealing with the matter of establishing a new . bridge, but the very same sentence of the code provision which confers upon the ordinary the power to establish new bridges, . also confers upon him the power to alter or abolish existing bridges. It therefore follows that the same discretion which could be exercised in the one case could also be exercised in the other. Whenever a public officer has vested in him the right to . exercise his discretion about a matter within his jurisdiction, the courts will not interfere with him in the exercise of his duties, unless it is manifest that he has abused his discretion in dealing with the matter. The commissioners of Chatham county having vested in them the same discretion in regard to the roads and bridges of the county that the ordinary has, their . decision in regard to these matters will not be controlled by mandamus, unless, as has been stated, it is plainly shown that the decision made was an abuse of the discretion which the law vested in them.

2. It is clear, we think, that under the act of 1870 the bridges which had been erected in conformity to the act of 1831 became . a part of the public-road system of Chatham county. The right ' to alter or abolish the same was vested in the officials of that . county having control of county matters, fully and completely, . and the act of 1871 was simply declaratory of the law as it existed at the time of the passage of the act. The question to be now considered is: Does it appear from this record that the county commissioners abused the discretion which the law vested

in them by refusing to rebuild the bridges? It appears from the record that one of these bridges had been destroyed for more than twenty years before the application for mandamus was filed, and that the other had been destroyed for many years, the exact period not appearing in the record. Applications were made from time to time to the county authorities through a period of many years to rebuild the bridges, but they persistently refused to do so. The effect of their action amounts really to an abolition of the bridges as a part of the public-road system of the county, though no resolution in terms abolishing them was ever passed. It further appears that it was the judgment of the county authorities who passed upon the applications to rebuild that the bridges were not of sufficient public utility to authorize the expenditure of the large amount of money which would be required to rebuild them. The facts which appear in the record in regard to the cost of the bridges, the value of property upon the islands, the number of residents, and the business carried on between such islands and the other parts of the county, were all of a character going to sustain the judgment of the commissioners in the decision that they had reached in regard to the advisability of rebuilding the bridges. A careful investigation of this record has failed to disclose to us a state of facts which would authorize a holding that the county commissioners have abused their discretion in regard to this matter. Such being the case, it was error to grant the mandamus.

*Judgment reversed. All the Justices concurring.*