# CASES

### DECIDED IN, THE

# SUPREME COURT OF GEORGIA

##### AT THE

## OCTOBER TERM, 1917.

---

DANIELS *et al.,* relators, *v.* COMMISSIONERS OF PILOTAGE FOR THE BAR OF TYBEE AND RIVER OF SAVANNAH.

1. If exceptions pendente lite are duly taken to an interlocutory ruling of the court, and are regularly certified and entered of record in the cause, which at its final determination is carried by writ of error to the Supreme Court by the opposite party, error may be assigned by the defendant in error on the record in the Supreme Court upon the exceptions pendente lite, and a reversal of the ruling complained of in the exceptions pendente lite may be allowed when it is manifest that the erroneous decision of the court affected the final result of the case. Civil Code, § 6138; *Hodgkins* v. *Marshall,* 102 *Ga.* 191 (29 S. E. 174).
2. A refusal by the Commissioners of Pilotage for the Bar of Tybee and River of Savannah, upon ex parte application, to authorize licensed pilots upon that bar to operate a boat separate and independent from the pilot boat to which, under the rules of the commissioners, all pilots are required to be attached, is not the exercise of a judicial function by the commissioners of pilotage, and the writ of certiorari will not lie to such refusal.
3. The writ of mandamus does not lie to control the conduct of an officer vested with a discretion, except where the exercise of that discretion has been so capricious or arbitrary as to amount to a gross abuse. Under the law and ordinances applicable to the Commissioners of Pilotage for the Bar of Tybee and River of Savannah, it was within the discretion of the commissioners to decline to authorize licensed pilots upon that bar to operate a pilot boat separate and independent from that to which, under existing rules of the commissioners, all pilots were required to be attached. Under the circumstances disclosed by the record, it does not appear that the commissioners of pilotage abused their discretion in refusing to grant authority to employ such an independent pilot boat; and the *application for mandamus absolute was properly* denied.

No. 30. ; OCTOBER 18, 1917.

Petition for mandamus. Before Judge Kent. Chatham superior court. December 14, 1916.

W. T. Daniels and E. C. Daniels instituted an action against the Commissioners of Pilotage for the Bar of Tybee and the River of Savannah, for the writ of mandamus to compel the respondents as public officers to grant authority to the relators and their associates to use and operate a designated boat as a pilot boat for the bar of Tybee and river of Savannah and the several bars and inlets north of Sapelo bar, and to require them to revoke a certain order theretofore passed by the commissioners whereby authority to use the boat had been declined. The alternative writ was duly issued, returnable to the May term of the superior court then in session. On the day appointed the respondents filed their return to the writ, and therein answered to the merits of the petition; and the court adjourned for the term. At the next term the case came on to be heard, and the respondents filed a motion to dismiss the petition, on the grounds: "First. The relators have no right to the remedy by mandamus, for they have another specific legal remedy, to wit: writ of certiorari. Second. The petition is insufficient in law and sets up no cause of action, certiorari being the remedy to correct the alleged error of the commissioners." The motion to dismiss was overruled, and exceptions pendente lite to this ruling were duly allowed and filed. The case then proceeded to a hearing before a jury, and resulted in a mistrial. The court adjourned for the term; and at the next term, with a different judge presiding, the respondents renewed their motion to dismiss the petition for mandamus. The relators moved to strike this renewal motion. The court overruled the motion to strike, and sustained the renewal motion to dismiss expressly on the ground that the relators' remedy, if any, was by certiorari. The relators excepted to this, and caused the record including the exceptions pendente lite to be brought to the Supreme Court. The respondents did not present a cross-bill of exceptions; but when the case was called for hearing in the Supreme Court, they assigned error on the exceptions pendente lite filed by them in the trial court.

Omitting formal parts, the petition for mandamus alleged the following in substance: The relators are duly licensed pilots upon the bar of Tybee and river of Savannah, and the respondents are

the duly appointed Commissioners of Pilotage for the Bar of
Tybee and River of Savannah, and the several bars and inlets
north of Sapelo bar, and are an official body created under exist-
ing laws of the State of Georgia, composed of designated indi-
viduals. As commissioners of pilotage they are empowered, under
statutes of the State, to prescribe rules and regulations for the gov-
ernment of pilots, to become operative when approved by the city
council of Savannah. The commissioners have duly passed rules
which have been approved by the city council of Savannah, among
which are rules "four" and "six" (set out in the opinion). A
corporation organized under the name of Pilots Navigation Com-
pany a number of years ago became the owner of a steam pilot boat
called "John H. Estill," the name of which was afterwards changed
to "Leopold Adler," and all of the pilots of the bar became owners
of shares of stock in the corporation. In the course of time the
shares of stock were sold by the several pilots until only a few of
them were interested as stockholders. The corporation above men-
tioned leased this pilot boat to an unincorporated company called
the Savannah Pilots Association, upon the basis of the corporation
receiving for the hire of the boat one third of the net earnings.
All of the Savannah pilots used the boat in rendering services as
pilots for which they were licensed. Prior to the introduction of
the "John H. Estill" the Savannah pilots operated several pilot
boats propelled by sail entirely, upon each of which there were from
four to six pilots; the boats operating independently of each other,
and competing with each other for the pilot business over the bar.
At intervals the pilots, under a voluntary arrangement, would oper-
ate the several sail pilot boats in their joint interest, and at other
times they were operated independently and competitively. In 1916
the "Leopold Adler" was taken out of service as a pilot boat by
the corporation owning it, and the lessor furnished to its lessee,
the Savannah Pilots Association, a tug-boat as a substitute.
Shortly before, a number of Savannah pilots other than relators
purchased the auxiliary schooner "Eclipse," and, upon petition to
the commissioners of pilotage, were granted permission to use
that vessel as a pilot boat, and it went into commission as such on
April 19, 1916. The relators, not desiring to operate the "Eclipse"
in conjunction with the other pilots interested in her, purchased
the auxiliary schooner "Cumberland" for use as a pilot boat. On

April 12, 1916, relators "petitioned" the commissioners of pilotage, in behalf of themselves and those who might be associated with them, for authority to use the "Cumberland" as a pilot boat. The petition was in the form of a letter, the body of which was as follows: "The undersigned have been in negotiation for the purchase of the auxiliary schooner 'Cumberland' for use as a pilot boat for the bar of Tybee and Savannah river. The Cumberland is five years old, and has been in use for the past three years as pilot boat at Fernandina. She is 66 feet by seventeen feet three inches, by seven feet two inches, and has fifty tons burden. She has a fifty-horse four-cycle engine, two masts, eight berths, and can make eight miles an hour under power. Before closing for the purchase of the boat, we desire for ourselves and those who may be associated with us the right to operate the Cumberland for this purpose. We would appreciate very much your early action on this petition. Yours very truly." The commissioners replied to this letter by writing another, which, omitting formal parts, was as follows: "I beg to advise you that your petition of April 12th, asking that this Board grant you authority to put into commission the auxiliary schooner 'Cumberland' as a pilot boat on Tybee bar and Savannah river was to-day presented to the members of this board; and after having heard your petition and the statements of the members of your body, the Commissioners have requested me to say to you that it is with sincere regret that they note your differences, which to their mind appear to be only personal ones which could easily be adjusted between you and the other pilots of the Savannah Pilots Association; and it is the sincere desire of the members of this Board that you and the other pilots get together and adjust your differences, and continue to operate as one body, and continue to give the port the service that it is entitled to, and which it has had under the present organization for the past twenty-five years. The Commissioners are of the opinion, after going fully into the matter, that there is no need or reason why another pilot boat should be put into commission, and, from the information received by them as to the present vessel, 'The Eclipse,' can see no reason why this vessel should not be able to give good service as a pilot boat and be able to meet all the demands for a pilot boat for some time to come. While the Commissioners do not deny your petition, they desire to secure some

additional information, which they may take from one to two weeks to secure, and should you still desire the Commissioners to act upon your petition, same will have their attention after the information desired is secured; but it is earnestly hoped that you and your association will be able to adjust your differences and continue to operate as one harmonious body." After the exchange of several letters between the petitioners and the clerk of the board of commissionrs, and between attorneys of the petitioners and the clerk of the commissioners, the chairman of the board wrote to the petitioners a letter which, omitting formal parts, was as follows: "I beg to advise you that at a meeting of the Commissioners of Pilotage, held this day, your letter of April 20th, 1916, was presented; and after due consideration by the Commissioners, I am directed to say to you that the Commissioners regret that you and your associates could not agree to accept the advice given you in a letter to you on April 19th from Mr. Hull, acting chairman; and the commissioners note from your letter of April 20th that you have definitely made up your minds that you will not operate in the present Pilot Boat 'Eclipse,' and that for many reasons you prefer to have your own boat. The commissioners, having heard from all of the principal Atlantic ports, who report that while at some of the ports more than one pilot boat is operated (the business of the port requiring a greater number), that all are operated as a unit under one organization at each port, are of the opinion that the interest of this port does not require an additional pilot boat, the present vessel being ample and well able to take care of the business at the present time. Should at any time in the future the business of the port require an additional boat, the Commissioners will authorize its use, but not as an independent boat. Your petition for the use of the Cumberland as an independent pilot boat is therefore denied, as the Commissioners will at all times require the Savannah pilots to operate as a body under the Savannah Pilots Association and governed by the rules of the Commissioners of Pilotage. I beg further to say, that as you have stated that you have made up your minds not to operate in the pilot boat 'Eclipse,' unless you report immediately to the Savannah Pilots Association for duty on the present pilot boat duly commissioned by this board, you will be cited to appear before the Commissioners of Pilotage for trial

for disobedience of orders and the rules and regulations for the government of pilots. A definite and immediate reply to this communication is expected. For your further consideration, I beg to say that this is the unanimous decision of this board."

Other allegations of the petition were: While the Board of Commissioners of Pilotage have power to prescribe rules and regulations for the government of pilots, the rules must be reasonable and just, and in conformity with law. The statutes under which the board was created did not contemplate that all of the Savannah pilots shall be compelled to form themselves into one association, or to operate as a unit under one organization, or in one boat. On the contrary, the laws of the State contemplate that the Savannah pilots may freely compete with each other, and that they may own and operate separate pilot boats, and it is not to the interest of the port of Savannah that they should be subject to operate in one combination. The pilot boat "Cumberland," in which the relators are interested, is a fit and proper boat for pilot services on the Savannah bars within the jurisdiction, and is equal to or better than the "Eclipse." Relators have a clear legal right to use their pilot boat "Cumberland," and the commissioners of pilotage are under a clear legal duty to grant to relators the right so to use it. The commissioners have no discretion in the matter; but if they have any discretion, it has been arbitrarily exercised and abused. Relators requested of the commissioners authority to use the boat "Cumberland," because they conceived, under rule 6, promulgated by the commissioners, they had the right to pass upon the question of fitness of the "Cumberland" for services as intended, and if the boat was fit, relators would have the legal right to use it, and the commissioners would be under a clear legal duty to grant authority to use it.

*Lawton & Cunningham,* for plaintiffs.

*Garrard & Gazan,* for defendants.

ATKINSON, J. 1. The ruling announced in the first headnote does not require elaboration.

2. In the Civil Code, § 5440, it is declared: "All official duties should be faithfully fulfilled; and whenever, from any cause, a defect of legal justice would ensue from a failure or improper fulfillment, the writ of mandamus may issue to compel a due performance, if there be no other specific remedy for the legal rights."

The trial judge dismissed the action for the writ of mandamus solely upon the ground that the plaintiffs had a legal remedy by thority to use the boat "Cumberland," because they conceived, un- tiorari will lie for the correction of errors committed by justices of the peace, corporation courts or councils, or any inferior judica- tory, or any person exercising judicial powers, including the ordi- nary, except in cases touching the probate of wills, granting let- ters testamentary and of administration." The powers and duties of the Commissioners of Pilotage for the Bar of Tybee and River of Savannah are set forth in the Civil Code, § 1897 et seq.; and certain rules were adopted by the commissioners of pilotage and approved by the city council of Savannah, some of which so far as material are set forth in the petition for mandamus. It ap- pears from these that some of the duties of the commissioners of pilotage are merely ministerial, some executive, and others judi- cial. In this respect they are similar to the powers and duties or- dinarily devolved upon municipal corporations. *Carr* v. *Augusta,* 124 *Ga.* 116 (52 S. E. 300), involved the question whether a municipal council, when proceeding to declare forfeited a license which has been issued by it, is exercising judicial powers. In the course of the opinion it was said: "If such action is in the exer- cise of judicial power, an error committed may be corrected on certiorari. The duties of a municipal council are varied. Some are merely ministerial, some are legislative, some are executive; but there are still others which are judicial in their nature, and the determination of where the legislative or ministerial duty ends and where the judicial duty begins is often attended with extreme difficulty. Harris on Certiorari, § 48. Where the duty is purely ministerial, or purely legislative, the error can not be corrected by certiorari. But where the duty imposed upon the municipal coun- cil clearly requires the exercise of judicial powers, or even the exercise of quasi-judicial powers, the general rule is that an error committed may be reviewed on certiorari. 1 Smith on Mun. Corp. § 561. When a municipal council passes an ordinance it acts in its legislative capacity, and certiorari will not lie. But when, after having passed an ordinance, it proceeds to enforce the same, ac- cording to its terms, against one who has become liable to a penalty provided by the ordinance, in the determination of whether such person has violated it, and has thereby become subject to be

proceeded against under its provisions, a municipal council is exercising a judicial power of the same nature that any court would exercise in investigating whether a given person has violated a given law. The action of the council, no matter by what name it might be called, order, resolution or otherwise, which declares that a person has laid himself liable to penalties prescribed in the ordinance, is a judgment of the council, which can only be reached by the exercise of judicial functions, that is an application of the law as laid down in the ordinance to the facts that appear before the council at the time the resolution is passed. The ordinance in effect imposed a penalty upon one holding a license to sell liquor when he did any one or more of the acts referred to in the ordinance. The ordinance devolved upon the council the determination of the question of fact as to whether he had been guilty of the acts declared illegal. . . But it is said that the city council had authority to revoke the license at pleasure; and this is true. *Melton* v. *Moultrie*, 114 *Ga.* 462 [40 S. E. 302]; *Ison* v. *Griffin*, 98 *Ga.* 623 [25 S. E. 611]. If in the exercise of its right the city had passed an ordinance or resolution simply revoking the license, this would have been done in the exercise of its executive powers, and the courts would not have reviewed the same on certiorari. But when they attempt to revoke the license for cause, under the provisions of the ordinance providing that a certain act shall be sufficient cause for the revocation of the license, and do not proceed under their general discretionary power, then the determination by the council of the question as to whether the person holding the license has made himself amenable to the provisions of the ordinance declaring a certain act to be sufficient cause for revoking the license, requires the exercise of judicial powers, and renders the action subject to review on certiorari. In *Asbell* v. *Brunswick*, 80 *Ga.* 503 [5 S. E. 500], it was held, where a municipal council had the right to remove a policeman without trial, as well as to remove him after trial, that if the council proceeded under the latter method, their judgment of removal was subject to review on certiorari, while if they had proceeded under the former method, their action would have been in the exercise of their executive powers, and not subject to review on certiorari. See also, *Gill* v. *Brunswick*, 118 *Ga.* 85 [44 S. E. 830]; *Mayor of Macon* v. *Shaw*, 16 *Ga.* 172." All that is said may, by analogy, be properly

applied to the case under consideration in determining whether the commissioners of pilotage should have granted the request of the applicants to operate a separate pilot boat. The commissioners of pilotage made certain informal inquiries and took the statements of the applicants under consideration, and denied the request. This was not a judicial trial based on any existing right or wrong under the law or any rule of the commissioners, but merely entertainment and refusal of a request pertaining to the executive duties of the commissioners. What is here said is in accord with an elaborate discussion of the subject of judicial tribunals, in Muir's Admrs. *v.* Bardstown, 120 Ky. 739 (87 S. W. 1096 (6), 1098). The case under consideration differs from *Commissioners of Pilotage* v. *Low, R. M. Charlton,* 298, and *Low* v. *Commissioners of Pilotage,* Ibid. 302, in which Low was formally tried by the commissioners of pilotage on charges of neglect of duties. In the same manner, the case of *Healey* v. *Dean,* 68 *Ga.* 514, may be distinguished. That was a case in which a person filed an application to the commissioners of pilotage for a pilot's license. The application was resisted by other licensed pilots, and after a formal hearing the license was granted. The other pilots sued out a writ of certiorari, and the trial judge reversed the judgment of the commissioners and revoked the license. This was held to be erroneous, on writ of error to the Supreme Court. It is not necessary to refer to other cases cited on the briefs of counsel for respondents, which upon the grounds mentioned are distinguishable from the present. It is sufficient to add that the trial court was in error in holding that certiorari was an available remedy and for that reason mandamus would not lie.

3. While the trial judge based his decision refusing a mandamus absolute on the ground that the applicants had a specific remedy by certiorari, his judgment will not be reversed if there was no ground for mandamus. In the case of *Wood* v. *Board of Education of Washington County,* 137 *Ga.* 808 (74 S. E. 540), it is said: "It is declared by the code of this State that mandamus does not lie 'to a public officer who has an absolute discretion to act or not, unless there is a gross abuse of such discretion; but it is not confined to the enforcement of mere ministerial duties.' Civil Code (1910), § 5441. 'Ordinarily the writ of mandamus is

a remedy for official inaction. It does not lie to control the conduct of an officer vested with a discretion, except where the exercise of that discretion has been so capricious or arbitrary as to amount to a gross abuse.' *City of Atlanta* v. *Wright,* 119 *Ga.* 207 (45 S. E. 994) ; *Patterson* v. *Taylor,* 98 *Ga.* 646 (25 S. E. 771) ; *Dale* v. *Barnett,* 105 *Ga.* 259 (31 S. E. 167)." In the Civil Code § 1897 et seq., it is provided that the corporate authorities of the several seaports in this State, including Savannah, shall have power respectively to appoint commissioners of pilotage for their respective bars. The boards of commissioners are required to be composed of "ship agents, exporters, merchants, pilots, or others who are engaged in, or are familiar with, marine shipping, and with the requirements of their respective ports." The commissioners of pilotage of each port are empowered to license such persons · (being citizens of the United States) of good character as they shall think most fit to act as pilots for the purpose of conducting vessels inward to, or outward from, the several ports and rivers for which they shall be licensed during their good behavior. No person other than a duly licensed pilot is entitled to receive · any fee, gratuity, or reward for conducting or piloting any vessel inward to, or outward from, any port for which a pilot shall be licensed. The commissioners are also given power, and it is made their duty, to prescribe rules and regulations for the government of pilots, and to prescribe fees for their services; and they are authorized to impose such penalties, not inconsistent with law, for neglect of duty or for violation of the orders or of the rules and regulations of the commissioners as they may think proper. It is provided in the Civil Code, § 1918, that "The commissioners shall preserve, in a neatly-bound book, a record of all their acts, and of the rules and regulations adopted by them for the direction and government of the pilots; but in the City of Savannah such rules and regulations shall not be operative until approved by the city council. . ." In conformity with this provision the Commissioners of Pilotage for the Bar of Tybee and River of Savannah made certain rules, which were duly approved by the authorities of the City of Savannah, for the government of pilots and the matter of piloting vessels within the territory over which they had jurisdiction. Among these were the following: "Rule 4. The pilots shall provide and maintain a steam pilot boat, with accom-

modations aboard for at least eight pilots, which boat shall always
(weather permitting) remain on the station at the outer bar for
the purpose of furnishing pilots to inward-bound vessels and re-
lieving outward-bound vessels of pilots. Said pilot boat shall not
leave her station at the outer bar, except in cases of emergency,
oftener than twice in twenty-four hours for the purpose of taking
on or landing pilots at Tybee. Whenever pilot boat is compelled to
leave outer station for coal or repairs, her place is to be supplied
during such absence by a proper substitute, which temporary sub-
stitute, however, shall be required to have accommodations for not
less than six pilots. The remaining two pilots needed to make the
regular crew of eight at outer bar shall remain in the city office of
the Savannah Pilots' Association, during office hours as per Rule
1, ready to fill any vacancy in crew at outer bar. Whenever forced
to leave station on account of stress of weather, or other emergency,
she shall report back at station at earliest possible moment."
"Rule 6. No vessel shall be used as a pilot boat, except by the au-
thority and under the inspection of the Commissioners of Pilotage.
Said vessel must be able to go to sea at all reasonable times, and
must carry signals as per rules prescribed by United States regu-
lations." The power to make rules for the government of pilots,
subject to approval by the municipal authorities of the City of
Savannah, as prescribed by the Civil Code, § § 1901, 1918, construed
with reference to the business involved and qualifications pre-
scribed for commissioners of pilotage, was sufficiently broad to
authorize the commissioners to make rules requiring licensed pilots
to become attached to one or more pilot boats, which in the opinion
of the commissioners would subserve the business interest of the
shipping public, and others involved in the marine commerce of
the port, and to restrict the number of pilot vessels to be em-
ployed on the bar. Rules four and six, quoted above, were of that
character and to that extent reasonable and lawful. A person
could not have the advantage of engaging in the business of pilot-
ing vessels over the bar, and of exacting compulsory fees under
the statute, without submitting himself to rules of the commis-
sioners of pilotage. The rules being lawful, the commissioners
had the authority to enforce them, or, in their discretion, to modify
them by appropriate amendment to the extent of allowing the use
of other pilot boats over the bar. Whether they would do so, how-

20

ever, was purely a matter of discretion, and not one of absolute right. In denying the application made to them, in the present case, for authority to use a separate vessel, it can not be. said, under the circumstances of the case, that there was any abuse of discretion. Under the application of the rule stated in the first part of this division of the opinion, this was not a proper case for the grant of mandamus, and there was no error in refusing the application.

*Judgment affirmed. All the Justices concur, except Fish, C. J., and Beck, P. J., absent.*