THE JUSTICES OF THE INFERIOR COURT OF LEE COUNTY, plaintiffs in error, vs. STEPHEN U. D. HUNT, JESSE M. DAVIS, et al., defendants in error.

Where the Justices of the Inferior Court issue execution against the County Treasurer, and his securities, improperly, *certiorari* is not the remedy—such Justices not being a *Court*.

Certiorari.   Decision by Judge ALLEN, at chambers.

At the January Term, 1858, of Lee Inferior Court, Jesse M. Davis moved to set aside, as to him, a *fi. fa.* and judgment issued by the Justices of the Inferior Court of said county, when sitting for county purposes, in their own favor, as justices aforesaid, against Stephen U. D. Hunt, a former defaulting Treasurer of said county, and Turner Hunt, Daniel A. J. Sessions, Jesse M. Davis and Stephen R. Weston, his securities.

The grounds for said motion were as follows:

1st. That said judgment was obtained, and said *fi. fa.* issued, without any notice to him; and that he had no day in Court, nor any opportunity to object to the same.

2d. That the judgment is for a larger amount, by at least three hundred dollars, than was due to said county, by the principal in said bond.

3d. That said movant was liable on the said bond only as security for said Stephen U. D. Hunt, with the other securities thereto; that he signed the same, to a large extent induced by the fact that he saw the name of Turner Hunt thereto, and that he is informed and believes that said Turner Hunt never signed the same, nor authorized any one to sign for him, and that he is not therefore liable as security on said bond.

4th. That said bond was not taken or authorized by the Inferior Court, and was not a statutory bond.

On the calling of the motion, Davis asked the Court to submit the questions of fact heretofore set forth, to a jury•

The Court refused to submit them to a jury, but proceeded to hear and determine them for itself.

Davis proved by *Stephen Gay*, that he was Clerk of the Inferior Court at the time when the execution was issued. The Court (not at a regular Term) passed an order requiring Hunt to settle, as county Treasurer, with the Court, within ten days after notice of the order, as in default thereof an execution would issue against him and his securities. Hunt was served with a copy of this order, as an extract from the minutes. More than ten days afterwards, a judgment was passed, and the execution issued. No notices were issued to the securities. The bond, record and judgment were destroyed with the court-house.

*Dr. Richardson* testified, that he was a member of the Inferior Court of Lee county, at the time when Stephen Hunt was elected Treasurer. The election took place some time after the first Monday in January, 1853. Hunt was allowed a short time (perhaps a week) after his election to give the bond. The bond was not signed in presence of the Court; it was presented by the principal already signed, and was accepted by the Court. Davis's and Weston's names were not on the bond when it was first presented. The bond, without their signatures, was not satisfactory to the Court, and they signed it before it was accepted by the Court.

*Wm. C. Gill* swore, that he had seen the bond before it was burnt; had heard some doubts expressed about old Mr. Hunt's signature, but not until after the death of Stephen U. D. Hunt. Witness had examined the bond, with reference to that matter. Had seen Turner Hunt write at least three times; once he was drunk, and wrote a bad hand; on the other occasions he was rather sober, and wrote a much better hand. The signature to the bond was in some respects rather unlike Mr. Hunt's. He was an old man. In the opinion of witness, Turner Hunt did not sign it; he had doubts about it; the signature to the bond was "some" smoother hand than he had seen him write. Is the Sheriff

of the county, and as such has sold, since the death of Turner Hunt, some of his property, under this *fi. fa.* Jesse M. Davis bought it. Took a deed and took possession. Davis gave one hundred and ninety-five dollars for the land that was sold; the land is worth twenty-four hundred dollars.

After hearing the proof, the Court overruled the motion, and ordered that the *fi. fa.* proceed.

Davis then excepted to the decision of the Court, on the grounds:

1st. That the Court refused to submit the questions of fact connected with the motion, to a jury, but heard and determined those questions for itself.

2d. Because the Court having heard said proof, overruled the motion to set aside said judgment and *fi. fa.*

The Court then overruled these objections.

Davis, by his counsel. then petitioned for a writ of *certiorari*, which was granted by his Honor Judge ALLEN. To the granting of the *certiorari* the said justices, by their counsel, excepted, and in this Court assign the same for error.

F. H. WEST, for plaintiff in error.

McCAY & HAWKINS, *contra.*

*By the Court.*—STEPHENS J. delivering the opinion.

Certiorari is a remedy which lies only against a *Court.* The Justices of the Inferior Court, in issuing execution against the county Treasurer and his securities, do not act as a Court. Their action is ministerial—as much so as the action of tax collectors in issuing execution against defaulting tax payers ; and that this latter is ministerial, see *Tift vs. Griffin*, 5 *Ga. Rep.* 193, and *Bassett vs. The Governor*, 11 *Ga. Rep.* 217. They act as so many individuals. The very Act which confers this power upon them, discriminates between them and the Court, conferring this power upon the justices, or a majority, but conferring upon the Inferior Court,

*eo nomine,* the power to regulate the Treasurer's compensation. Again, I say, they are not a Court for another reason. My colleagues were not prepared to concur in it, but reflection has only confirmed me in it. I say, that part of the Act which confers this power, is unconstitutional; because it is a total departure from the caption of the Act. The caption is simply this: "An Act to appoint county Treasurers and define their duties." To issue an execution against them is a totally different thing from appointing them or defining their duties. You cannot *cover* it with the caption. You may appoint, and you may define duties, but you must do something else—something further and beyond what is expressed in the caption, before you can issue an execution— you must *enforce* duty. The constitutional prohibition is: "Nor shall any law or ordinance pass containing *any* matter *different* from what is *expressed* in the title thereof." The appointment is *expressed,* and the definition of duties is *expressed,* in the title, but the enforcement of duties is *not* expressed. Can any man say it is? To illustrate: Congress has power to "define *and* punish piracies and felonies committed on the high seas." Can any body say the power to *define* includes the power to *punish?* The framers of the Constitution of the United States thought not; they said define *and* punish, only because they must have thought that both ideas would not be *expressed* if either word was left out. Again, suppose this Act had gone on and provided that if the Treasurer should fail in his duties as "defined," he should be hung, would any body say this punishment was "expressed" in the title? that the caption covered it? To define is one thing, to punish is another, to enforce is another. The caption is to appoint and to define; it covers no *more* than these, and to push any thing more under it, can be done only on the principle, that where there is a will there will be found a way. This Act is the only one conferring the power of issuing execution against the Treasurer, on the Justices of the Inferior Court. If it fails here, it dont exist; and the justices

in exercising it, not only do not act as a Court, but they do not act as a *legally constituted body*, and *certiorari* no more lies against their action, than it would against the unauthorized action of any other individuals. This is altogether a different case from a correction of an excess or usurpation of jurisdiction by a legal Court. Nothing is more common than the correction of such excess or usurpation in inferior *Courts* by *certiorari*. But here there is not only no legal Court, but no legal body. Whatever remedy then there may be, (and I cannot doubt there is one,) it is not *certiorari*. For a strong argument in favor of enforcing the constitutional prohibition here invoked by me, and for a strong analagous case to this one, see *Prothro & Kendall vs. Orr et al.*, 12 *Ga. R.* 36. The Judge having sustained the *certiorari*, his judgment must be reversed.

Judgment reversed.