*R. R. Jackson,* for defendant.

---

## MUTUAL LIGHT AND WATER COMPANY *v.* CITY OF BRUNSWICK.

Where a municipal corporation of this State filed a petition with the Georgia Public Service Commission to revise and lower the rates charged for electric lighting and power in the municipality by a public-service corporation engaged in furnishing electricity to the public, subject to the jurisdiction of the commission as to the rates, and where the commission issued a rule nisi requiring the public-service corporation to show cause why the rates should not be revised, and where that corporation filed its answer in opposition to any lowering of the rates, with a cross-prayer for the raising of the rates, and where the issue thus formed came on to be heard regularly before the commission, when the municipality and the public-service corporation both appeared, announced ready for trial, introduced evidence, and presented arguments in behalf of each respectively; and where in such cause an order adverse to the company was rendered by the commission, lowering the rates until the further order of the commission, the writ of certiorari will not lie from the superior court to such order and judgment for the purpose of correcting alleged ·errors therein, at ·the instance of the public-service corporation, the act of rate making being legislative or quasi legislative in character.

No. 3943. SEPTEMBER 4, 1924.

The Court of Appeals (in Cases Nos. 14278, 14328) certified the following questions for decision, as necessary to a proper determination of the case: "1. Where a municipal corporation of this State filed a petition with the then Railroad Commission of Georgia (now the Georgia Public Service Commission of Georgia), hereinafter called 'the commission,' to revise and lower the rates charged for electric lighting and power in the municipality and its vicinity by a public-service corporation, hereinafter called the company, engaged in furnishing electricity to the public for lighting and power, subject to the jurisdiction of the commission as to the rates to be charged for such service, and where the commission, upon the filing of such petition, issued a rule nisi requiring the company to show cause before the commission at its offices in the capitol at Atlanta, Georgia, at a designated time, why the

rates being charged by the company should not be revised, and where, in response to the rule nisi so issued, the company filed its answer in resistance to the petition of the municipality and in opposition to any lowering of the rates, with a cross-prayer for the raising of the rates, and where, after continuance to a later date, the issue thus formed came on to be heard regularly before the commission, when the municipality and the company both appeared, announced ready for trial, introduced evidence, and presented arguments in behalf of each respectively; and where in such cause an order adverse to the company was rendered by the commission, lowering the rates until the further order of the commission, will the writ of certiorari lie from the superior court to such order and judgment for the purpose of correcting alleged errors therein, at the instance of the company; in other words, may the company in such a matter be entitled to the issuance by the superior court of the writ of certiorari for the correction of the errors of the commission in their order reducing the rates?

2. If the preceding question should be answered in the affirmative, the Court of Appeals desires instruction from the Supreme Court in answer to the following question: Where, in a matter before the Georgia Public Service Commission, it renders an order and judgment which one of the parties in the case seeks, by a petition for the writ of certiorari, to have reviewed by the superior court, and assuming the cause is one in which the party dissatisfied with the order and judgment of the commission would otherwise be entitled to the issuance of the writ, and where the petition for the writ has been sanctioned and the writ has been issued, should the certiorari proceeding be dismissed on the motion of the defendant in certiorari, upon any or all of the following grounds, namely: That no bond and good security, conditioned to pay the adverse party in the cause the eventual condemnation-money, together with all future costs, and approved by said Georgia Public Service Commission, was given or filed by the petitioner for certiorari with the petition before the writ of certiorari issued; that no certificate from said Public Service Commission that all the costs which may have accrued on the trial below was produced or filed with said petition for certiorari; and that no affidavit in writing by the petitioner or by any person acting for it, in compliance with the Civil Code, § 5187, and showing that owing to its poverty it was

unable to pay the costs or give security, was filed with the petition for certiorari: when the grounds of such motion are true, but when no costs had accrued to be paid, and when it is further true by the record that, after the sanction of the petition for certiorari, the same, together with a proper bond annexed thereto, was presented to the Georgia Public Service Commission for its approval of the bond and for its certificate of the payment of accrued costs, and that the commission 'refused to approve said bond or any bond in said case, or to make or sign any certificate as to the payment of costs, . . solely upon the ground that certiorari will not lie and that their rulings are not subject to review by certiorari,' and that on these facts being shown to the judge of the superior court who sanctioned the petition, he himself, as such judge, then approved the bond and again ordered the writ to issue, reciting such facts in his order, dated six days from the sanction of the petition ?"

*Conyers & Wilcox* and *Colquitt & Conyers,* for plaintiff in error in main bill.

*R. D. Meader* and *E. J. Reagan,* contra.

Atkinson, J.   In section 5 of the act of 1907 (Acts 1907, p. 72), relating to increase of the members of the Railroad Commission of Georgia and extension of the powers of that body, control was given it over gas and electric light and power companies, with the right to fix rates which such companies should charge their patrons.   Civil Code (1910), § 2662.   By the act approved August 21, 1922 (Acts 1922, p. 143), the name of the Railroad Commission of Georgia was changed to the Georgia Public Service Commission, and it was provided that the Georgia Public Service Commission should be vested with all the powers and authority which at that time were exercisable by the Railroad Commission of Georgia.   Section 3 of the act provided: "That the Commission shall prescribe the rules of procedure and for taking of evidence in all matters that may come before it.   In the investigations, preparations and hearing of cases, the Commission shall not be bound by the strict technical rules of pleading and evidence, but it may exercise such discretion as will facilitate its efforts to ascertain the facts bearing upon the right and justice of the matters before it.   In all formal cases heard and determined, when deemed needful, the Commission shall render an opinion, setting out the issues involved

in the case, and its decision ruling and finding thereupon.    The Public Service Commission shall conduct hearings and investigations in different parts of the State, when, in the opinion of the Commission, such hearings will best serve the interest and convenience of the public."    Section 4 provided:  "A full and complete record shall be kept of all proceedings had before the Commission, on any formal investigation had, and all testimony shall be taken down by the official reporter appointed by the Commission."    Section 5 provided:  "The Commission, or any party, may, in any investigation, cause the deposition of witnesses residing within or without the State to be taken in the manner prescribed by law, for like depositions in civil actions in civil courts."    A hearing was had as set forth in the first question propounded by the Court of Appeals, but the subject-matter of the hearing was not a violation of an existing rule of the Public Service Commission, but was a mere inquiry as to what rate of charges the Mutual Light and Water Company should be allowed to make to persons in the City of Brunswick.    Where the inquiry was of that character, the mere fact that a hearing was afforded would not render the proceeding judicial in the sense that the writ of certiorari would lie to review the order which the Public Service Commission might render with respect to the matter.    If the Public Service Commission should render an unreasonable or illegal order fixing the rates which the company might charge, the company would have a remedy by resort to the courts.

In *City of Atlanta* v. *Georgia Railway & Power Co.,* 149 *Ga.* 411 (4) (100 S. E. 442), it appeared that the Railroad Commission had under consideration the question of fixing rates which might be charged by the Georgia Railway & Power Company to its patrons in the City of Atlanta.    A formal hearing was had, and after the conclusion of the evidence the matter was reserved for consideration.  In reaching a decision the commissioners took under consideration a document which had not been formally introduced in evidence.    In a suit to declare void the order rendered by the Railroad Commission, one of the grounds of attack upon the decision which was rendered was the consideration of this evidence.    It was held that the proceeding was quasi legislative, and therefore the conduct of the commissioners in considering the evidence which had not been introduced at the hearing was not

cause for setting aside the order as void. In the course of the opinion it was said: "It is recognized generally that in prescribing rates for future application a rate-making body does so in the exercise of quasi legislative functions. Reagan *v.* Farmers' Loan & Trust Co., 154 U. S. 362 (14 Sup. Ct. 1047, 38 L. ed. 1014); Knoxville *v.* Water Co., 212 U. S. 1, 8 (29 Sup. Ct. 148, 53 L. ed. 371); Louisville & Nashville R. Co. *v.* Garrett, 231 U. S. 298, 305, 307 (34 Sup. Ct. 48, 58 L. ed. 229). For the reasons indicated, the fact that the railroad commission may have acted in part upon information not formally introduced in evidence before it would not render void its order fixing a schedule of rates to be applied in the future." A distinction was made between a matter of prescribing rates to be operative in the future and a matter of a charge against a railroad company for violation of some existing rule of the railroad commission, stating that the proceeding relative to the rates to be charged would be quasi legislative, and that the proceeding relative to violation of an existing rule of the Railroad Commission would be quasi judicial. The real test as to the legislative or judicial character of the proceeding is not to be found in the fact of a hearing being afforded, but depends upon the subject of the inquiry—whether it is as to rates that shall be charged in the future, or whether it is as to a charge for violation of some rule already in existence. It is legislative to make a rule for future conduct, and judicial to punish for infraction of, or to enforce, an existing rule.

In the case of Prentis *v.* Atlantic Coast Line, 211 U. S. 210 (3, 4) (29 Sup. Ct. 67, 53 L. ed. 150), it was held: "The making of a rate by a legislative body, after hearing the interested parties, is not res judicata upon the validity of the rate when questioned by those parties in a suit in a court. Litigation does not arise until after legislation; nor can a State make such legislative action res judicata in subsequent litigation. Proceedings legislative in nature are not proceedings in a court within the meaning of Rev. Stat. § 720, no matter what may be the character of the body in which they take place." Relating to the commission it was said in the opinion: "Among its duties it exercises the authority of the State to supervise, regulate, and control public-service corporations, and to that end . . . it has been clothed with legislative, judicial, and executive powers." Beginning on page 225, it **was**

said: "We shall assume, as we have said, that some of the powers of the commission are judicial, and we shall assume, without deciding, that, if it was proceeding against the appellees to enforce this order and to punish them for a breach, it then would be sitting as a court. . . But we think it equally plain that the proceedings drawn in question here are legislative in their nature, and none the less so that they have taken place with a body which at another moment, or in its principal or dominant aspect, is a court such as is meant by § 720. A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions, by making a new rule to be applied thereafter to all or some part of those subject to its power. The establishment of a rate is the making of a rule for the future, and therefore is an act legislative not judicial in kind." In *Daniels* v. *Commissioners of Pilotage,* 147 *Ga.* 295 (2) (93 S. E. 887), it was held: "A refusal by the Commissioners of Pilotage for the Bar of Tybee and River of Savannah, upon ex parte application, to authorize licensed pilots upon that bar to operate a boat separate and independent from the pilot boat to which, under the rules of the commissioners, all pilots are required to be attached, is not the exercise of a judicial function by the commissioners of pilotage, and the writ of certiorari will not lie to such ruling." In the case under consideration, the purpose of the investigation before the commission was not to pass upon any judicial issue between the parties, but was for the sole purpose of gathering necessary information to enable the commission to fix just and reasonable rates to be charged in the future. It is similar to a legislative hearing where an act is proposed to fix rates in which the legislature seeks to gather information that will enable that body to fix fair, just, and reasonable rates.

Applying the above principles, an order of the Georgia Public Service Commission lowering the rates charged for electricity, as set out in the first question propounded by the Court of Appeals, is quasi legislative in character, and the writ of certiorari will not lie from the superior court to review such an order. This ruling does not conflict with the decisions in the cases of *Georgia Railroad* v. *Smith,* 70 *Ga.* 694, relating to constitutionality of the act

of 1879, creating the Railroad Commission of Georgia; *Southern Railway Co.* v. *Melton,* 133 *Ga.* 277 (65 S. E. 665), relating to constitutionality of rule 9 of the Railroad Commission of Georgia; *City of Atlanta* v. *Blackman Health Resort,* 153 *Ga.* 499 (113 S. E. 545), relating to conclusiveness of an order of the city council of Atlanta refusing a building permit, which was applied for under the provisions of § 729 of the Code of Atlanta, an ordinance existing at the time the application for the building permit was made. In this last case the city afforded a formal hearing on the application for a builder's permit, on the basis of the pre-existing law; and it was held that the proceeding was quasi judicial in character. The distinction is manifest between that case and the present, where the fixing of the rates is not in pursuance of any existing rule, but is a proceeding to formulate a rule which will be operative in the future—a proceeding that does not enforce or depend upon any former rule of the commission.

The first question propounded by the Court of Appeals having been answered in the negative, it becomes unnecessary to answer the second question. *All the Justices concur.*