## SOUTHEASTERN GREYHOUND LINES *v.* GEORGIA PUBLIC-SERVICE COMMISSION *et al.*

No. 10620.   SEPTEMBER 16, 1935.

*Haas, Gambrell & Gardner, Edgar Chambers Jr., N. F. Culpepper,* and *R. W. Keenon,* for plaintiff in error.

*M. J. Yeomans, attorney-general, J. J. E. Anderson, B. D. Murphy, G. L. Goode, John A. Boykin, solicitor-general,* and *Heyman & Heyman,* contra.

GILBERT, Justice.   The Court of Appeals (in Case No. 24233) certified to this court the question quoted in the headnote above. It may be urged that under the act of 1931 (Ga. Laws 1931, p. 199) the right of review by certiorari may be invoked in such a case under sec. 16 which provides: "In all respects in which the commission has power and authority under this act, proceedings

may be instituted, complaints made and filed with it, process issued, hearings held, opinions, orders, and decisions made and filed; and any final order may be reviewed in any court of competent jurisdiction of this State under the conditions and subject to the limitations as now prescribed by law as relates to the Georgia Public Service Commission." It must be observed that there is no provision in that language for an unconditional review, but that it is to be *under the conditions and subject to the limitations as now prescribed by law as relates to the Georgia Public-Service Commission.* By this nothing is added to any right that might already exist to review by certiorari a finding of the Public-Service Commission. The precise question has not heretofore been before this court, and for a survey of the decisions of other jurisdictions many cases have been examined, but, to recall the words of Omar Khayyam, we came out by the same door through which we entered. "The adjudications respecting the cases wherein the function exercised is of such a character that a certiorari will or will not lie are very numerous and not always harmonious." Throop on Public Officers, 765, § 802. The decisions of other jurisdictions do not afford much help, because they are governed by express statutory provisions as to review or appeal, and in a few cases the matter is determined by constitutional provision. We are to determine whether in this State, "subject to the limitations as now prescribed by law as relates to the Georgia Public Service Commission," the writ will lie. It is provided in art. 6, sec. 4, par. 5, of the constitution that the superior courts "shall have power to correct errors in inferior judicatories by writ of certiorari, which shall only issue on the sanction of the judge," etc. Code of 1933, § 2-3205. It is not apprehended that any one will contend that by its mere creation the Public-Service Commission became an inferior judicatory or court. But by statute the issuance of the writ became broadened, so that now "The writ of certiorari shall lie for the correction of errors committed by justices of the peace, corporation courts or councils, or any inferior judicatory, *or any person exercising judicial powers,* including the ordinary, except in cases touching the probate of wills, granting letters testamentary and of administration; also from the Supreme Court to the Court of Appeals as provided by section 2-3009." Code of 1933, § 19-101. (Italics ours.) From the question propounded by the Court of

Appeals we understand that the answer sought, as to the applicability of the writ, is as to a proceeding wherein the Public-Service Commission has revoked a certificate of public convenience and necessity because, *in the opinion of the commission,* a motor common carrier has abandoned passenger service along a certain highway. If, therefore, in the hearing, pursuant to which the certificate was revoked, the commission was "exercising judicial powers," it would seem that it would lie. But if the Public-Service Commission, in the circumstances suggested, was not exercising judicial powers, certiorari would not lie to review the finding of the commission. "The writ of certiorari lies to correct errors or restrain excesses of jurisdiction of inferior courts and officers acting judicially only. It will, therefore, not be issued to officers whose functions and duties are ministerial, executive, or legislative, and not judicial." Mechem on Public Offices and Officers, p. 666, § 1001. "The fact that a public agent exercises judgment or discretion in the performance of his duty does not make his action or his functions judicial." Id. 668, § 1005. See also *Daniels* v. *Commissioners,* 147 *Ga.* 295 (93 S. E. 887); *City of Atlanta* v. *Blackman Health Resort,* 153 *Ga.* 499 (113 S. E. 545); *Bryant* v. *Board of Education Colquitt County,* 156 *Ga.* 688 (119 S. E. 601). It is well settled that, in determining the nature of the action of public agents, the organic law and the constitutional divisions of authority, legislative, executive, and judicial, must be kept in mind. Unquestionably the jurisdiction of the commission over the highways of the State is regulatory, and was delegated by the General Assembly in the lawful exercise of its powers. *Stephens* v. *Central of Georgia Railway Co.,* 138 *Ga.* 625, 628 (75 S. E. 1041, 42 L. R. A. (N. S.) 541, Ann. Cas. 1913E, 609), in which Justice Hill furnishes an interesting discussion of such control. In *McKinney* v. *Patton,* 176 *Ga.* 719, 721 (169 S. E. 16), in quoting from the provisions of the motor common-carrier's act as to what must be considered in determining whether a certificate of public convenience and necessity should be granted, the court said: "By these and other provisions it appears that the statutes under consideration are regulatory in nature and that all persons proposing to conduct the business of a motor carrier as defined thereby must submit themselves to the jurisdiction and control of the Public Service Commission." Section 3 of the act of 1931 provides:

"The commission is hereby vested with power to regulate the business of any person engaged in the transportation as a common carrier of persons or property, either or both, for hire, by motor-vehicle on any public highway in this State." The highways belong to the State. Stephenson v. Binford, 287 U. S. 251 (53 Sup. Ct. 181, 77 L. ed. 288, 87 A. L. R. 721). Users of them, even when engaged exclusively in interstate commerce, are subject to regulation by the State to ensure safety, convenience, and the conservation of the highways. *Aero-Mayflower Co.* v. *Ga. Pub.-Serv. Com.,* 179 *Ga.* 431, 439 (176 S. E. 487), affirmed, 295 U. S. 285 (55 Sup. Ct. 709, 79 L. ed. 749). It is generally held that in the exercise of public functions subordinate boards or tribunals, though not created as courts, may at times exercise powers which are judicial and at other times powers which are administrative, executive, or political. A judge of a court of general jurisdiction may sometimes act only in a ministerial capacity. It is necessary to consider the nature of the act to determine whether or not judicial powers are exercised. "It is difficult, if not impossible, precisely to define what are judicial or quasi-judicial acts, and there is considerable conflict in the decisions in regard thereto, in connection with the law as to the right to a writ of certiorari. It is clear, however, that it is the nature of the act to be performed rather than the office, board, or body which performs it, that determines whether or not it is the discharge of a judicial or a quasi-judicial function." 11 C. J. 121, § 68. See also Prentis v. Atlantic Coast Line, 211 U. S. 210, 227 (29 Sup. Ct. 67, 53 L. ed. 150). Before making such an examination in the present case, it may be well to set forth definitions of "judicial powers" or "judicial action." "To adjudicate upon and protect the rights and interests of individual citizens, and to that end to construe and apply the laws, is the peculiar province of the judicial department." Cooley on Constitutional Limitations, 184. See also Owners of Lands v. People, 113 Ill. 296; People v. Chase, 165 Ill. 527 (46 N. E. 454, 36 L. R. A. 105). "Judicial action is an adjudication upon the rights of parties who in general appear or are brought before the tribunal by notice or process, and upon whose claims some decision or judgment is rendered. It implies impartiality, disinterestedness, a weighing of adverse claims, and is inconsistent with discretion on the one hand,—for the tribunal must decide according to law and

the rights of parties,—or with dictation on the other; for in the first instance it must exercise its own judgment under the law, and not act under a mandate from another power. The tribunal is not always surrounded with the machinery of a court, nor will such machinery necessarily make its action judicial. A county court is certainly a judicial body for some purposes, but no more so for the name, nor for the fact that it has a seal and a clerk and keeps a record. The character of its action in a given case must decide whether that action is judicial, ministerial, or legislative, or whether it be simply that of a public agent of the county or State, as in its varied jurisdiction it may by turns be each." In re Saline County Subscription, 45 Mo. 52 (100 Am. D. 337, 338), which is widely quoted. The case of Wheeling & Elm Grove Railroad Co. v. Triadelphia, 58 W. Va. 487 (52 S. E. 499, 4 L. R. A. (N. S.) 321), contains a lengthy discussion of the question of a judicial act. As to the revocation of a certificate, the act of 1931 (Ga. Laws 1931, p. 199) provides in section 4(d) that it may be done under different conditions. It will be observed that "The commission may, at any time after notice and opportunity to be heard and for reasonable cause, suspend, revoke, alter, or amend any certificate issued under this act or the motor-carriers act of 1929 or the motor-carriers act of 1931, if it shall be made to appear that the holder of the certificate has wilfully violated or refused to observe any of the lawful and reasonable orders, rules, or regulations prescribed by the commission or any of the provisions of this act or any other law of this State regulating and/or taxing motor-vehicles," etc. If a hearing were had under this part of section 4(d), the commission would be dealing with a predetermined rule or regulation or law, etc., and therefore would be applying a law to a state of facts and might be said, though it is not necessary here to decide, to be engaged in a judicial proceeding or exercising judicial powers. This possibility seems to have been recognized by the General Assembly. In examining the act of 1929 (Ga. Laws 1929, p. 293), the predecessor of the act of 1931, we find that a similar provision for revocation, section 4(c), did not contain the words "and for reasonable cause." Evidently the General Assembly took pains to insert such language in the act of 1931 to guard against a delegation of power to the commission to act capriciously or illegally in a proceeding in which the commission would, the

General Assembly evidently conceived, be engaged in the exercise of judicial powers, applying a rule, regulation, or law to a presented state of facts. But with regard to the revocation of a certificate, not because of the violation of any rule, regulation, or law, but because of failure to furnish adequate service, as in its application for a certificate the motor common carrier proposed to furnish, the General Assembly provided further that "or if in the opinion of the commission the holder of the certificate is not furnishing adequate service, or if the continuance of said certificate in its original form is incompatible with the public interests." In other words, in dealing with the paramount consideration of the grant of the certificate, that is, the convenience and necessities of the public in the use and enjoyment and protection of their highways, and fully sensible of the hardship or harm that might result from tying up the administration of the commission in so vital a matter by review, the General Assembly affirmatively provided that, as to a revocation of such certificate under that part of section 4(d) last above quoted, the commission should predicate its action only upon its *opinion*. It can hardly be seriously asserted that thereby the delegated power involved a function of applying any "law" to a state of facts. It is one thing to provide that a thing may be done if it is made to appear that under the law a certain situation exists; it is another thing to provide that a thing may be done if in the opinion of a named party a certain situation exists. The one is justiciable; the other is administrative. "An act is none the less ministerial because the person performing it may have to satisfy himself that the state of facts exists under which it is his right and duty to perform the act." 34 C. J. 1181, § 6. "Even where it is essential to maintain strictly the distinction between the judicial and other branches of the government, it must still be recognized that the ascertainment of facts, or the reaching of conclusions upon evidence taken in the course of a hearing of parties interested, may be entirely proper in the exercise of executive or legislative, as distinguished from judicial, powers. The legislature, had it seen fit, might have conducted similar inquiries through committees of its members, or specially constituted bodies, upon whose report as to the reasonableness of existing rates it would decide whether or not they were extortionate and whether other rates should be established, and it might have used methods

like those of judicial tribunals in the endeavor to elicit the facts. It is 'the nature of the final act' that determines 'the nature of the previous inquiry.' Prentis v. Atlantic Coast Line, 211 U. S. 210, 227," supra. Louisville & Nashville R. Co. v. Garrett, 231 U. S. 298, 307 (34 Sup. Ct. 48, 58 L. ed. 229). Could it be seriously contended that the General Assembly acts judicially because, before enacting a statute, it affords a hearing in a given case? And could the Public-Service Commission be stronger than its creator, and be said to act judicially merely because it affords a hearing, either of its own design or because so directed by the General Assembly? A body does not necessarily exercise judicial powers because it may make an investigation or use discretion in acting in a given case. In Gray v. McLendon, 134 Ga. 224 (10), 258 (67 S. E. 859), it was held that "The provision in the act of 1879 of the General Assembly, creating the office of railroad commissioner, in which that body reserved to itself unlimited discretion to remove any one holding such office, does not confer on the General Assembly judicial power," etc. It was further stated in the opinion that "The office of railroad commissioner was created by the legislature, and the creating power had the right to prescribe the terms upon which the office might be held. Any one accepting the office did so subject to these terms. Such person could not take the office except on the terms imposed by the act creating it. He had to accept both the office and the conditions under which it could be held, or had to reject both." It would seem by analogy that any one who accepts a certificate of public convenience and necessity takes it with all of the conditions attached to its issuance, and that the Public-Service Commission, exercising the right of revoking the certificate when in its *opinion* the holder is not furnishing adequate service, is not acting judicially. In *Felton* v. *Georgia Federation of Labor,* 178 *Ga.* 313 (173 S. E. 662), involving the removal from office of a Public-Service Commissioner by the Governor, it was held in headnote 1 that "The orders of the Governor suspending the respondents as officers of the Public-Service Commission were in the exercise of the political powers of the executive, as conferred by the General Assembly, and in no sense a judicial action which could be reviewed by writ of certiorari." Can there be any difference in the nature of the act of one being removed from office and in the case of a certificate of public con-

venience and necessity being revoked? In discussing the test of a judicial act, Mr. Justice Atkinson, in *Mutual Light & Water Co.* v. *Brunswick*, 158 *Ga.* 677, 681 (124 S. E. 178), said: "The real test as to the legislative or judicial character of the proceeding is not to be found in the fact of a hearing being afforded, but depends upon the subject of the inquiry—whether it is as to rates that shall be charged in the future, or whether it is as to a charge for violation of some rule already in existence. It is legislative to make a rule for future conduct, and judicial to punish for infraction of, or to enforce, an existing rule." That statement was in a case involving the question of whether or not certiorari would lie to review the action of the Public-Service Commission in lowering electric and power rates to be charged by a municipality, and where, though contesting parties appeared before the commission and were heard, it was held that the commission was not exercising judicial powers. Justice Atkinson states that a judicial nature of a proceeding is determined by "whether it is as to a charge for violation of some rule already in existence" and that it is "judicial to punish for infraction of, or to enforce, an existing rule." It can hardly be said that the proceeding under investigation falls into such a category. It must be assumed that the motor common carrier acquired its certificate in the manner provided by law. Section 5 of the act of 1931 provides how the application for a certificate shall be made, and section 6 provides for the hearing thereon. The applicant must, under section 5, file the application in writing and under oath, containing "full information concerning the applicant's financial condition, the equipment proposed to be used, including the size, weight, and capacity of each vehicle to be used, and other physical property of the applicant; (c) shall state the complete route or routes over which the applicant desires to operate, and (d) the proposed time schedule of the operation," etc. Thus it is seen that the carrier, when permitted to operate, is not doing so under any rule or regulation by the commission as to what equipment or service it should furnish, but, to speak exactly, is operating because it proposed to furnish certain equipment and service and, under such representations, has been awarded a certificate of public convenience and necessity by the commission. As provided by the act, no perpetual franchise was thereby given. When the carrier was called on to show cause why

its certificate should not be revoked, no question of the "violation of some rule already in existence" was involved. Neither can it be said that the purpose was to "punish for infraction of, or to enforce, an existing rule." When the certificate was revoked, the carrier merely reverted to its former status. The motive of the commission was regulatory, not punitive. Under the definition of Justice Atkinson, therefore, the proceeding before the commission was other than judicial. In *Mutual Light &c. Co.* v. *Brunswick,* supra, the court quoted approvingly from *Daniels* v. *Commissioners of Pilotage,* supra, in which it was held that a refusal by the commissioners to authorize licensed pilots to operate a boat separate and independent from the pilot boat to which all pilots were required to be attached was not the exercise of a judicial function. In the opinion in the *Daniels* case is cited the case of Muir *v.* Bardstown, 120 Ky. 739 (87 S. W. 1096), which was dealing with an act or ordinance of a municipality, but a portion of the reasoning is pertinent to the issue as to the exercise of judicial powers. In the latter case it was stated: "There must generally be two or more litigants. An issue of law or fact must be joined by them, within the jurisdiction of the tribunal, with respect to property or some personal right in which the litigants are interested. Its conclusion must be binding upon the parties until reversed or set aside in the manner provided by law for opening up judgments of courts. To hear evidence, to swear witnesses, to impanel a jury if the case admits of it, to punish for contempt, to compel parties and witnesses to attend, and finally to enter a judgment settling the matter in dispute, are the distinguishing features of a court of judicature. Master commissioners—commissioners to condemn rights of way for railroads and other purposes—are not courts, nor are assessing officers, boards of review, or of equalization of assessments. The action of the council in assessing omitted property is purely ministerial, although it has mixed certain discretion, as to finding values, and the like, which is not reviewable, and which quality is sometimes called 'judicial,' though it is not judicial in the sense that it is the act of a court." On the same subject as dealt with in Muir *v.* Bardstown, supra, see Crowell *v.* Benson, 285 U. S. 22 (7) (52 Sup. Ct. 285, 76 L. ed. 598). If the refusal of a certificate, as held in the *Daniels* case, supra, be not a judicial act, then, rationally, the revocation of a certificate is not one.

It is expressly provided in section 28 of the act of 1931 that "Nothing in this or any previous act of the General Assembly shall ever be construed to vest in the owner or holder or assignee of any certificate of public convenience and necessity any vested right to use the public roads of this State, and shall never be construed to give to any motor common carrier any perpetual franchise over such public roads." "Whatever personal advantage or benefit inures to the recipient of such a certificate is an incident to the carrying out of the purpose of serving the public convenience and necessity, but is not an object of the statute." 42 C. J. 681, § 109. It has been held that a certificate is not an *asset* with which a receiver may be charged. Easterbrook *v.* Public Utilities Commission, 112 Ohio St. 417 (147 N. E. 761). The following are some instances in this State where it has been held that certain investigations and actions did not involve the exercise of judicial powers: It has been repeatedly held by this court that judges of superior courts and ordinaries, as the case may be, do not act judicially in deciding election contests. They exercise discretion and judgment and at times must determine issues of fact, but do not in such undertakings exercise judicial powers, though the same person may at other times, when acting as a court, exercise such powers. In *Justices of the Inferior Court of Lee County* v. *Hunt,* 29 *Ga.* 155, it was held that the justices of the inferior court were not acting judicially in issuing execution against a county treasurer and his sureties. In *Meadows* v. *Taylor,* 82 *Ga.* 738 (10 S. E. 204), it was held that an ordinary's action upon a petition to make the stock law operative in a certain militia district was not judicial, and certiorari would not lie. In *Bowen* v. *Clifton,* 105 *Ga.* 459 (31 S. E. 147), it was held that the Secretary of State in hearing and determining contests of elections held for the purpose of deciding whether county sites should be removed does not act judicially. In *Harris* v. *Glenn,* 141 *Ga.* 687 (81 S. E. 1103), it was held that the ordinary, in determining a contest as to election of municipal officers, does not act judicially. (Citing.) In *Bower* v. *Bainbridge,* 116 *Ga.* 794 (43 S. E. 67), it was held that certiorari does not lie to the decision of the mayor and aldermen in determining the value of property for the purpose of assessing taxes. In *City Council of Augusta* v. *Loftis,* 156 *Ga.* 77 (118 S. E. 666), a ruling of the board of health on appeal to review a ruling of a

plumbing inspector was held not to be a judicial act, and that certiorari would not lie. A number of decisions of this court have been brought to our attention from which it is urged that by analogy the action of the Public-Service Commission should be held to be in the exercise of judicial powers. We distinguish their inapplicability, as follows: In *Mayor &c. of Macon* v. *Shaw*, 16 *Ga.* 172, a charge of "malpractice" by gambling was preferred against a city marshal, and he was tried. Here was the exercise of judicial powers by a tribunal acting as a court, applying to the facts presented at the trial, in a quasi-criminal proceeding, a previously enacted ordinance. Naturally this court held that the mayor and council were acting as a *judicatory*. It is, of course, provided by statute that the writ of certiorari will lie to review the action of an inferior judicatory. In *Asbell* v. *Brunswick*, 80 *Ga.* 503 (5 S. E. 500), the removal of a police officer was involved, and a trial was had under the terms of the act of 1872 which expressly provided that the mayor and aldermen might, at their discretion, remove an officer for breach or neglect of duty. But a trial was had after charges had been preferred. Six aldermen *sat as a court*. This court held that it was error to hold that the alderman acting as mayor pro tem. could not vote, and that upon a petition for certiorari alleging such error (involving a point of law) the writ should have been granted. In *Gill* v. *Brunswick*, 118 *Ga.* 85 (44 S. E. 830), a policeman was tried for misconduct, under authority of the act of 1900, p. 240, providing that no officer should be removed except upon arraignment or accusation, and that the mayor and aldermen should have authority to subpœna witnesses and punish for contempt, and plainly providing for a trial, a quasi-criminal proceeding, the mayor and aldermen applying a law to a presented state of facts and thereby acting judicially. In *Carr* v. *Augusta*, 124 *Ga.* 116 (52 S. E. 300), an ordinance provided that any liquor dealer should forfeit his license in case the holder be convicted in any court of competent jurisdiction of a violation of any Federal, State, or municipal regulation governing the sale of liquor. A hearing was granted before a resolution was passed declaring the license of a dealer forfeited. The municipal council was trying the issue under the ordinance and the presentation of facts in a judicial capacity, and not revoking the license *at their independent discretion* as they might

have done.   In *Tibbs* v. *Atlanta*, 125 *Ga.* 18 (53 S. E. 811), a trial was had before the board of police commissioners on preferred charges.   The proceeding involved the application of law to presented facts, a judicial investigation.   In *Atlanta & West Point Railroad Company* v. *Redwine*, 123 *Ga.* 736 (51 S. E. 724), the commission was proceeding under a statute to lay out and open a public road, and providing that they should sit *as a court.*   The railroad filed a petition for injunction, which was denied.   This court said that a landowner, if he desired to object to the action of the commissioners, should have appeared, in response to notice, before the commissioners and urged his objections, and "Had the commissioners differed with the company as to the law respecting their power to lay out a public road longitudinally upon its right of way, the company could avail itself of its remedy by certiorari to review the finding.   Why?   Because the commissioners, in such a case, would have been trying the rights of the landowner and applying the law, sitting as a court and exercising judicial powers. In *Dixon* v. *Sable*, 147 *Ga.* 623, 624 (95 S. E. 240), it was merely held that the city court of Savannah, though a constitutional court, was an inferior judicatory, and that certiorari would lie.   In *Ballard* v. *Jones*, 148 *Ga.* 513 (97 S. E. 443), it was held that certiorari would lie to reach a proceeding before county commissioners where a landowner's rights were involved and he appeared and urged legal objections against the establishment of the road. Obviously, such a proceeding, involving private rights under the law, would have been judicial.   In *City of Atlanta* v. *Blackman Health Resort,* supra, written objections had been filed by adjacent property owners against the issuance of a building permit.   The hearing involved a contest of property rights between different parties, and proceeded under section 629 of the then Code of the City of Atlanta providing for a hearing and judgment.   Clearly such section provides for the exercise of judicial powers.   We believe that enough of such cases have been discussed to show that they do not afford analogies for any holding that the writ of certiorari should lie to review a finding of fact by the Public-Service Commission.   They were cases in which previously enacted ordinances or laws were applied to presented evidence.   While it is not necessary so to decide here, it would seem that in the municipal council cases the writ would lie, without reference to whether the

proceeding was judicial, inasmuch as by statute it is provided that the writ will lie to review the finding of such corporation courts or councils. It will perhaps make clear the distinction as to when the writ will lie to a board's action and when it will not, if we consider the cases of *Leathers* v. *Furr*, 62 *Ga.* 421, and *Hudson* v. *Sullivan*, 93 *Ga.* 631 (20 S. E. 77), both of which were proceedings before commissioners. In the first case Leathers filed a petition with the county commissioners to cause Furr to remove obstructions from a private way claimed by the petitioner. Furr sought certiorari in the superior court. Leathers moved to dismiss. The motion was overruled, the certiorari was sustained, and Leathers excepted. This court held that a writ of certiorari would lie to review an error of the commissioners in ordering the private way opened. Here is a case which one might mistakenly urge as authority for the issuance of the writ to review the finding of the Public-Service Commission in the present case. But in the *Hudson* case, supra, in which Hudson and others sought to review by certiorari the action of the county commissioners in changing the line between two militia districts, the *Leathers* case is distinguished. In the *Hudson* case error was assigned on the refusal of the judge to sanction the petition for certiorari. This court upheld the judge, and said: "The case of *Leathers* v. *Furr*, 62 *Ga.* 421, relied on by counsel for the plaintiffs in error, is not at all like the present case. That case involved litigation between two individuals concerning a private way, the one alleging a right to the use of the way and seeking to have obstructions removed therefrom, and the other denying and contesting this right." In the first case the rights of contesting parties were involved, and the commissioners were exercising judicial powers. In the second case they were exercising only a political or executive power. In the one case the writ would lie; in the other it would not. In *Hillsman* v. *Harris*, 84 *Ga.* 432, 436 (11 S. E. 400), referred to in the opinion in the *Hudson* case, the first headnote is: "It would seem that the action of the ordinary in changing district lines is final and not subject to review by writ of certiorari or otherwise. The district lines mark the territorial divisions of a county, and the power of establishing and changing them is in its nature political or legislative rather than judicial." In the opinion Chief Justice Bleckley said: "The work of changing the lines of militia

districts is political rather than judicial in its nature, these districts being the political divisions of a county, and sustaining with reference to the county a relation somewhat like that which the counties sustain to the State. We doubt, therefore, whether it is in the power of the superior court to substitute by judgment upon a certiorari, or otherwise, its opinion for that of the ordinary as to the necessity and expedient location of district lines." The principles ruled in that case, and the reasoning, apply with equal force to the question here presented. The commission, acting in a governmental capacity, is composed of persons supposed to be experts in their particular field, and we should hesitate to hold that the scope of the writ of certiorari should be so broadened as to extend to a review of its finding of fact by a court, which in its very nature is not equipped to make the investigation that becomes necessary in the discharge of the duties imposed upon them under section 4(d) of the act of 1931 and under which the commission proceeded. The reasoning of Chief Justice Bleckley brings us close to that question. There is no suggestion of applying any law, rule, or regulation to a state of facts involving a judicial function, but only an investigation or "inquisition" as to a fact, in the determination of which the only test was the *opinion* of the commission, right or wrong, as contradistinguished from a justiciable issue. In Degge *v.* Hitchcock, 229 U. S. 162 (33 Sup. Ct. 639, 57 L. ed. 1135), the Postmaster-General issued an order depriving a certain corporation of the use of the mails, on the ground that it had used the mails for fraudulent purposes. The corporation filed in the Supreme Court of the District of Columbia a petition for certiorari, which was dismissed by the court. The Court of Appeals, without passing on the right to issue the writ, affirmed the decision on the ground that the finding by the Postmaster-General was supported by the evidence. In the United States Supreme Court the government renewed in argument its contention that the district court was without jurisdiction to issue the writ, and the Supreme Court held that it would not lie, saying on page 171: "The appellant insists that under these common-law principles the writ should issue here, because, having to act 'upon evidence satisfactory to him' (Rev. Stat. § 3929), and notice and a hearing having been given, the Postmaster-General acted in a judicial capacity in making the order, which was therefore subject to re-

view on certiorari because he exceeded his jurisdiction, and, without any proof of fraud in the use of the mails, deprived plaintiffs in error of the valuable right to receive letters and money through the post-office. It is true that the Postmaster-General gave notice and a hearing to the persons specially to be affected by the order, and that in making his ruling he may be said to have acted in a quasi-judicial capacity. *But the statute was passed primarily for the benefit of the public at large, and the order was for them and their protection. That fact gave an administrative quality to the hearing* and to the order, and was sufficient to prevent it from being subject to review by writ of certiorari. The Postmaster-General could not exercise judicial functions, and in making the decision he was not an officer presiding over a tribunal where his ruling was final unless reversed. Not being a judgment, it was not subject to appeal, writ of error, or certiorari. Not being a judgment, in the sense of a final adjudication, the appellants were not concluded by his decision, for had there been an arbitrary exercise of statutory power or a ruling in excess of the jurisdiction conferred, they had the right to apply for and obtain appropriate relief in a court of equity." Citing American School of Magnetic Healing *v.* McAnnulty, 187 U. S. 94 (23 Sup. Ct. 33, 47 L. ed. 90) ; Philadelphia Co. *v.* Stimson, 223 U. S. 605, 620 (32 Sup. Ct. 340, 56 L. ed. 570). (Italics ours.) In the present case the Public-Service Commission, in the interest of the public, called upon the motor common carrier to show cause why its certificate, issued subject to the future orders of the commission, should not be revoked for failure to furnish adequate service, and the commission reached the *opinion* that, for the public convenience and necessity, the certificate should be revoked. Let it be borne in mind that we are not holding that the carrier is in all events remediless. We address ourselves to the applicability of the writ of certiorari. If in a given case the commission should act beyond its powers or capriciously or fraudulently, that is another matter. The courts of equity, as stated in the Degge case, supra, are always open for the redress of wrongs upon a proper occasion, but what we here announce is that we will not by construction broaden the scope of the writ of certiorari, and especially in those circumstances where it is sought to review the finding of a tribunal acting, not in a judicial capacity, but as a proper

and lawful medium for safeguarding and protecting what is the paramount object of its creation, the interest and welfare of the public in the use and maintenance of its highways. In such a consideration the benefit to a particular licensee is only incidental, and the certificate is expressly declared by the statute itself to confer no vested right. The investigation by the commission was to determine, in the paramount interest of the public in the use and enjoyment of its highways, whether or not the holder of the certificate had abandoned the passenger service it had promised to operate and whether its certificate should be revoked. There was no *trial* of the holder of the certificate. The investigation was not, as a *trial* is usually declared to be, in its ordinary and accepted meaning, "the judicial investigation and determination of issues between parties." 7 Words and Phrases (3rd Series), 622. No vested right of the holder was being tried. No contest between parties was being heard. Under all of the definitions of judicial power hereinbefore set forth, we construe the revocation of the certificate under the circumstances as not involving the exercise of judicial powers. The grant of the certificate was the exercise of administrative or legislative power, and the revocation of the certificate was the exercise of a power of the same character. Therefore the question certified by the Court of Appeals is answered in the negative.

*All the Justices concur, except Russell, C. J., and Bell, J., who dissent.*

BELL, Justice, dissenting. The question certified by the Court of Appeals should be answered in the affirmative; that is to say, that the motor common carrier has the right, under the facts stated in the question, to review the judgment or order of the public-service commission, revoking the carrier's certificate of public convenience and necessity, through the medium of a writ of certiorari issued by the superior court having jurisdiction. The constitution of the State of Georgia provides that the superior courts "shall have power to correct errors in inferior judicatories by writ of certiorari, which shall only issue on the sanction of the judge, and said courts and the judges thereof shall have power to issue writs of mandamus, prohibition, scire facias, and all other writs that may be necessary for carrying their powers fully into effect, and shall have such other powers as are or may

be conferred on them by law." Code of 1933, § 2-3205. Section 19-101 of that Code provides: "The writ of certiorari shall lie for the correction of errors committed by justices of the peace, corporation courts or councils, or any inferior judicatory, or any person exercising judicial powers, including the ordinary, except in cases touching the probate of wills, granting letters testamentary and of administration; also from the Supreme Court to the Court of Appeals, as provided by section 2-3009." The principal matter for consideration here is whether the public-service commission was acting in a judicial or quasi-judicial capacity in revoking the carrier's certificate. The act of August 27, 1931, contained the following provisions: "(a) No motor common carrier shall, after this act goes into effect, except as hereinafter provided, operate without first obtaining from the commission, after hearing under the provisions of this act, a certificate of public convenience and necessity, pursuant to findings to the effect that the public interest requires such operation. (b) The commission may issue the certificate prayed for, or issue it for the partial exercise of the privilege sought; and may attach to the exercise of the rights granted by such certificate such terms and conditions as in its judgment the public interest may require. (c) All certificates of public convenience and necessity granted under the motor-carrier act of 1929 or the motor-carrier act of 1931 shall continue in force and effect until revoked by the commission or surrendered by the holders. (d) The commission may, at any time after notice and opportunity to be heard and for reasonable cause, suspend, revoke, alter, or amend any certificate issued under this act or the motor-carriers act of 1929 or the motor-carriers act of 1931, if it shall be made to appear that the holder of the certificate has wilfully violated or refused to observe any of the lawful and reasonable orders, rules, or regulations prescribed by the commission or any of the provisions of this act or any other law of this State regulating and/or taxing motor-vehicles, or if in the opinion of the commission the holder of the certificate is not furnishing adequate service, or if the continuance of said certificate in its original form is incompatible with the public interests. If and when the commission shall undertake to revoke or modify one or more certificates on account of the public interests on the ground that

the traffic conditions are such as not to justify the number of motor carriers which have been granted certificates over the route or routes in question, the preference shall be given to certificates in order of the time of their issuance, so that those which have been issued later in point of time shall, other things being equal, be canceled rather than those issued earlier in point of time. (e) Any such certificate may be transferred or hypothecated upon application to and approval by the commission, and not otherwise." Ga. L. 1931, pp. 200-201. "Nothing in this or any previous act of the General Assembly shall ever be construed to vest in the owner or holder or assignee of any certificate of public convenience and necessity any vested right to use the public roads of this State, and shall never be construed to give to any motor common carrier any perpetual franchise over such public roads." Ga. L. 1931, pp. 199, 211. The same act further provided: "In all respects in which the commission has power and authority under this act, proceedings may be instituted, complaints made and filed with it, process issued, hearings held, opinions, orders, and decisions made and filed; and any final order may be reviewed in any court of competent jurisdiction of this State under the conditions and subject to the limitations as now prescribed by law as relates to the Georgia Public-Service Commission." Ga. L. 1931, p. 206, § 16.

It is to be noted that the commission is given power to suspend, revoke, or amend a motor carrier's certificate "if in the opinion of the commission the holder of the certificate is not furnishing adequate service." To determine the question of whether adequate service was rendered, a citation was issued, a hearing was had, and evidence was introduced; whereupon an order revoking and canceling the certificate was entered. In discussing the remedy of certiorari as applied to municipal councils, this court has said: "The duties of a municipal council are varied. Some are merely ministerial, some are legislative, some are executive; but there are still others which are judicial in their nature, and the determination of where the legislative or ministerial duty ends and where the judicial duty begins is often attended with extreme difficulty. Harris on Certiorari, § 48. Where the duty is purely ministerial, or purely legislative, the error can not be corrected by certiorari. But where the duty imposed upon the municipal council clearly

requires the exercise of judicial powers, or even the exercise of quasi-judicial powers, the general rule is that an error committed may be reviewed on certiorari." *Carr* v. *Augusta,* 124 *Ga.* 116 (supra). Where a municipal council had the right to remove a policeman without or with a trial, but proceeded under the latter method, the judgment of removal could be reviewed on certiorari, although if the council had pursued the former method their action would have been taken in the exercise of their executive functions, and not subject to review on certiorari. *Asbell* v. *Brunswick,* 80 *Ga.* 503 (supra). In *Mayor &c. of Macon* v. *Shaw,* 16 *Ga.* 172, it was held that "The Mayor and City Council of Macon, in accusing, trying and dismissing their marshal, under and by authority of their charter and ordinances, upon a charge of malpractice in office, or neglect of duty, by gambling in said city, were acting in the character of a judicatory, in the sense in which that term is used in the constitution of our State; and the writ of certiorari to the superior court lies in such a case." In *Gill* v. *Brunswick,* 118 *Ga.* 85 (supra), this court ruled as follows: "It was in legislative contemplation that the mayor and aldermen of the City of Brunswick should act in a judicial capacity when exercising the power conferred upon them by the act of November 28, 1900, to dismiss from service all officers and members of the police force of the city who should be guilty of conduct which that act declares shall constitute cause for removal from office. See Acts of 1900, p. 240. A trial conducted in accordance with the terms of a statute of this character is a quasi-criminal proceeding, and the writ of certiorari lies to review the rulings and findings of such a corporation court." In *Tibbs* v. *Atlanta,* 125 *Ga.* 18 (supra), it was held that a proceeding before the board of police commissioners, discharging a policeman after trial in the manner prescribed by the law creating this board, was quasi-judicial in its nature, and the judgment of the board was subject to review by certiorari, like any other tribunal exercising judicial functions. In *Leathers* v. *Furr,* 62 *Ga.* 421, this court held that certiorari would lie to review an order of county commissioners to open a private way. In *Ballard* v. *Jones,* 148 *Ga.* 513 (supra), it was held that in an application to county commissioners for a new public road, a landowner whose land is sought to be taken for that purpose may urge before the com-

missioners any legal objection to establishing the road, and the judgment of the commissioners is reviewable by certiorari. See also *Atlanta & West Point R. Co.* v. *Redwine,* 123 *Ga.* 736 (supra), and cases there cited. In *Mutual Light & Water Co.* v. *Brunswick,* 158 *Ga.* 677 (124 S. E. 178), the question was whether the writ of certiorari would lie to review an order of the public-service commission lowering the rates of a water and light company, and it was held that the writ would not lie in such case. In the opinion, however, it was said: "The real test as to the legislative or judicial character of the proceeding is not to be found in the fact of a hearing being afforded, but depends upon the subject of the inquiry—whether it is as to rates that shall be charged in the future, or whether it is as to a charge for violation of some rule already in existence. It is legislative to make a rule for future conduct, and judicial to punish for infraction of, or to enforce, an existing rule." See also, in this connection, *Daniels* v. *Commissioners of Pilotage,* 147 *Ga.* 295 (supra), *City of Atlanta* v. *Georgia Railway & Power Co.,* 149 *Ga.* 411, 415 (100 S. E. 442); *City of Atlanta* v. *Blackman Health Resort,* 153 *Ga.* 499, 508 (supra); *Ruff* v. *Phillips,* 50 *Ga.* 130.

The certificate involved in the instant case represented an existing franchise and was a thing of present or potential value to the carrier, even though it may have granted a mere privilege as distinguished from a property right. The statute itself, in one section, refers to "the rights granted by such certificate." In *Carr* v. *Augusta,* supra, it was recognized that a city license to sell liquor did not invest the holder with a property right; and yet it was held that the municipal council, in determining whether the evidence was sufficient to authorize a revocation under the terms of a certain ordinance, was acting in a judicial capacity, and its judgment was subject to review on certiorari. It seems that wherever the question has been presented the courts have generally held that certiorari would lie in a case like the present. This view has been taken in the following decisions relating to bodies similar to the Georgia Public-Service Commission: Gulf &c. Railroad Co. *v.* Adams, 85 Miss. 772 (38 So. 348); State ex rel. Atty.-Gen. *v.* Railroad Commission, 109 Ark. 100 (158 S. W. 1076); Reynolds Taxi Co. *v.* Hudson, 103 W. Va. 173 (136 S. E. 833); Florida Motor Lines *v.* Railroad Commissioners,

100 Fla. 538 (129 So. 876). See also Jarman v. Board, 345 Ill. 248 (178 N. E. 91, 77 A. L. R. 1350). The courts of New York, declining to follow the reasoning in Prentis v. Atlantic Coast Line, 211 U. S. 210 (quoted in *Mutual Light &c. Co.* v. *Brunswick,* supra), have gone further than this court has consented to go in sustaining the writ. See People ex rel. Joline v. Willcox, 194 N. Y. 383 (87 N. E. 517); People ex rel. N. Y. C. R. Co. v. Public-Service Commission, 195 N. Y. 157 (88 N. E. 261). It has been held that the writ would not lie to review: the action of a civil-service commission in holding examinations and declaring percentages of candidates (Cook v. Civil-Service Commission, 160 Cal. 589, 117 Pac. 663); the examination of an applicant for a license as teacher in a public school (In re Walker v. Maxwell, 68 App. Div. 196, 74 N. Y. Supp. 94); an order of the Interstate-Commerce Commission refusing to award a reparation for unauthorized charges by a carrier (Southern Transportation Co. v. Interstate Commerce Com., 61 App. D. C. 284 (61 Fed. (2d) 925); an order of the Postmaster-General directing a postmaster not to deliver mail to named persons found after notice and hearing to have been using the mails to defraud (Degge v. Hitchcock, 229 U. S. 162, supra), and in Owners of Lands v. People, 113 Ill. 296 (supra), it was held that a drainage commission did not act judicially in making a special assessment. Cf. *Bower* v. *Bainbridge,* 116 *Ga.* 794 (supra). These and similar cases do not support the view that certiorari would not lie in the case at bar. Such cases differ from the present case, either in the character of the orders under consideration or in the nature of the tribunals from which they emanated, or in both of such particulars.

If it be true that a test of the applicability of the writ is whether the order or decision is conclusive and could be pleaded as res judicata (cf. Degge v. Hitchcock, supra), an order *revoking* a certificate of public convenience and necessity, because of an alleged default of the holder, and after notice and hearing according to statute, would amount to a judgment concluding the holder upon that issue. This would seem to be the necessary consequence, in view of the statute as to the power of the public-service commission and the procedure to be followed in such case. The result is not different because there may have been no adversary party in the ordinary sense of the term. *Mayor &c. of Savannah* v.

*Monroe, 22 Ga. App.* 285 (2) (96 S. E. 500), and cit. On princi-
ple, however, the ultimate test is not whether the order or decision
is conclusive, but is whether it is judicial in character. This must
be so, because if it is judicial in nature, it necessarily becomes
binding and conclusive upon the issues so adjudicated; whereas if
it is non-judicial, certiorari will not review it, regardless of its
possible force, or lack of force, as a conclusive determination.
Crowell *v.* Benson, 285 U. S. 22 (supra); 11 C. J. 120, § 67; 34
C. J. 874-880, §§ 1284-1287. The following statement appears in
5 R. C. L. 258, § 10: "It seems to be fairly well settled that
judicial action is an adjudication upon the rights of parties who
in general appear or are brought before the tribunal by notice or
process, and upon whose claims some decision or judgment is ren-
dered. It implies impartiality, disinterestedness, a weighing of ad-
verse claims, and is inconsistent with discretion on the one hand—
for the tribunal must decide according to law and the rights of
parties—or with dictation on the other; for in the first instance
it must exercise its own judgment under the law, and not act
under a mandate from another power. The tribunal is not always
surrounded with the machinery of a court, nor will such machinery
necessarily make its action judicial. The distinction between legis-
lative or ministerial functions is difficult to point out. What is a
judicial function does not depend solely upon the mental opera-
tion by which it is performed or the importance of the act. In
solving this question, due regard must be had to the organic law
of the State and the division of powers of government. It is not
enough to make a function judicial that it requires discretion, de-
liberation, thought, and judgment. It must be the exercise of
discretion and judgment within that subdivision of the sovereign
power which belongs to the judiciary, or, at least, which does not
belong to the legislative or executive department. If the matter
in respect to which it is exercised belong to either of the two last-
named departments of government, it is not judicial. Whenever an
act determines a question of right or obligation, or of property, as
the foundation upon which it proceeds, such an act is to that extent
judicial." On comparison, this statement appears to have been
carefully developed from the cited decisions, to which might be
added the Sinking-Fund Cases, 96 U. S. 700 (25 L. ed. 496), where
it was said: "The distinction between a judicial and a legislative

act is well defined. The one determines what the law is and what the rights of the parties are, with reference to transactions already had; the other prescribes what the law shall be in future cases arising under it. Wherever an act undertakes to determine a question of right or obligation, or of property, as the foundation upon which it proceeds, such act is to that extent a judicial one." See also Imperial Water Co. *v.* Board of Supervisors of Imperial County, 162 Cal. 14 (3) (120 Pac. 780, 782); 11 C. J. 121, § 68; Wood on Legal Remedies (1880), 194-218.

In Southern Transportation Co. *v.* Interstate Commerce Com., *supra*, the court said: "The power to make an order of reparation, such as the appellants seek in the present proceeding, is a statutory power not known to the common law. In creating and reposing this power in the commission, Congress clearly intended that only that body exercise the same. For a court to undertake to exercise this power through the commission by compulsory order, whether injunction, mandamus, prohibition, or certiorari, would amount to an assumption by the court of a statutory power conferred solely upon the commission and not upon the courts." This line of reasoning could not be applied in the case at bar, under the constitution and laws of this State, including the statutes designating the powers and functions of the public-service commission. The act of August 27, 1931, expressly provides that any final order of the commission may "be reviewed" in any court of competent jurisdiction, subject to existing laws. While this provision may have added nothing in the way of remedy to the existing law, it is yet a positive statement by the lawmaking body that the acts of the commission shall not be wholly free from revision by the courts. The act distinctly makes it the duty of the courts to pass upon orders of the commission in some cases. The class of cases, however, is not defined, nor is the method of review stated. It may be that the portion of the act just referred to would not apply at all in some instances (Code of 1933, § 2-123), and that in those cases to which it is applicable the remedy would vary according to the nature of the order drawn in question. *Jackson* v. *State Highway Department,* 164 *Ga.* 434 (4) (138 S. E. 847); *VanValkenburg* v. *Stone,* 172 *Ga.* 642 (158 S. E. 419). Since the legislature has expressly declared that the orders of the commission shall be subject to review by the courts under some conditions, why can

it be of any great importance whether such review should be had by a suit in equity instead of certiorari? A court of equity is fundamentally the more reluctant to act, and never assumes jurisdiction when there is an equally efficient remedy available at law. The statutes do not confine the judicial review to cases in which the commission has acted capriciously or arbitrarily. The word "review" in its ordinary legal signification means a judicial reexamination, as of the proceedings of a lower tribunal by a higher. This is its meaning in this statute as applied to such proceedings, if any, as may be judicial or quasi-judicial in character. If the order now in question is not possessed of that quality, then it would seem on principle that none such can ever be passed by the public-service commission. But what of the provision that in all matters within the sphere of the commission's authority, "proceedings may be instituted, complaints made and filed with it, process issued, hearings held, opinions, orders, and decisions made and filed"? Does this not imply that the commission may act judicially in some matters? Again, as to the revocation of a certificate, it is provided in effect that any such action must be based upon reasonable cause, and that the carrier shall first be given notice and opportunity to be heard. Such action certainly is not legislative, and it would seem to be more than administrative. If it is not a judicial proceeding, a more striking similarity could hardly be exhibited. It is generally held that public-service commissions may act judicially in some cases; and this seems to be implied in the majority opinion. Stress, however, is laid upon the fact that the carrier was charged with the violation of no existing rule of the commission, but was cited merely for an alleged abandonment of passenger service. The statute under construction draws no such distinction; and this difference in the facts does not alter the nature of the case or the quality of the order of revocation, as related to the franchise previously granted. Nor does the statute contain any language to indicate that one method of review may be adopted where the commission acts upon its "opinion," but that a different remedy must be employed where the order is based upon a finding or determination of facts, as distinguished from a mere opinion. If the order is judicial in the latter case, it is so in the former, and the result to the carrier is the same in both cases.

The right of certiorari is a constitutional right, and by express

statute it has been made applicable to "any inferior judicatory, or any person exercising judicial powers." It appears from the question certified that the public-service commission conducted a trial in accordance with statute; and in view of the subject-matter and the issue involved, the proceeding was judicial in character, and the commission was acting in the capacity of an inferior judicatory. Under the constitution and laws of this State, the writer can not escape the conclusion that the question certified should be answered in the affirmative. Chief Justice Russell concurs in this dissent.