## 31669. CITY OF LITHONIA et al. v. GEORGIA PUBLIC SERVICE COMMISSION et al.

JORDAN, Justice.

Appellant cities, Lithonia, Doraville, Pelham, and Covington brought this action seeking a declaratory judgment that rate schedule "LT," as promulgated by the Georgia Public Service Commission, and as supplemented December 4, 1975, is illegal, null and void. Appellants also sought a permanent injunction against the enforcement of the rate schedule. On cross motions for summary judgment by appellants and Georgia Power Company, and on motion to dismiss filed by the Georgia Public Service Commission, the trial court granted the motions of Georgia Power and the Public Service Commission and denied appellants' motion.

Appellants bring this appeal alleging that the Georgia Public Service Commission exceeded its jurisdiction in promulgating schedule "LT," and that the commission's actions were unreasonable, arbitrary, and capricious.

Schedule "LT" provides, so far as is applicable to the facts of this case, that if any municipality collects from the Georgia Power Company any payments by reason of the use of the streets, etc. or any license or franchise tax, the aggregate amount of such payments shall be billed pro rata to the customers within such municipality, provided that this shall not apply to sums not exceeding 4% of the total sales of electricity annually within said municipality which the company is obligated to pay pursuant to a franchise having a definite term of at least 35 years.

1. Taking the jurisdictional question first, we find for the reasons which follow, that the Public Service Commission acted within its constitutional jurisdiction to set just and reasonable rates. See Ga. Const. Art. IV, Sec. IV, Par. III (1945) (Code Ann. § 2-2703); *Ga. Power Co. v. Ga. Public Service Comm.,* 231 Ga. 339 (201 SE2d 423) (1973).

Appellants rely on Code Ann. § 69-310 (e), to support their claim that the commission exceeded its jurisdiction in promulgating schedule "LT." This Code section grants

to municipalities the power to grant franchises to public utilities "for the use and occupancy of the streets of the city for the purpose of rendering utility services, *upon such conditions and for such time* as the governing authority of the municipality may deem wise; *subject to the Constitution and the general law of the State of Georgia.*" Ga. L. 1962, pp. 140, 141 (Code Ann. § 69-310 (e)) (Rev. 1967). (Emphasis supplied.) Appellants claim that schedule "LT" abridges this statutory grant of authority by coercing a municipality into granting a long-term (35-year) franchise if it wishes to charge a franchise fee in excess of 4% of the annual sales within the municipality to residential and commercial users. Under schedule "LT," if a municipality does not grant a franchise for at least 35 years, the excess franchise payments over 4% of the residential and commercial sales, would be charged back, pro rata, to the users within the municipality.

First of all, it is clear that schedule "LT" does not require a municipality to grant a franchise for any specific term, or at any specific fee. It *does* dictate the *consequences* which will flow from the terms of a franchise agreement. Under the schedule, a city can choose not to enter into a franchise agreement of 35 years or more and still receive 4% of the revenues from residential and commercial customers. If the city seeks to charge 4% of the revenue of industrial customers as well, then it must enter into the long term franchise agreement. Any charge in excess of 4% would be charged back pro rata to the customers in the municipality.

We note the language in Code Ann. § 69-310 (e) which recognizes that the Constitution and general laws of the state may circumscribe, to some extent, the authority granted. Recognizing that the jurisdiction of the Public Service Commission stems from the Georgia Constitution, it follows that any *indirect* effect which a rate schedule might have upon a municipality's exercise of its discretion in granting franchises is entirely compatible with the authority granted the municipalities by that Code section.

2. We next consider appellants' claim that in promulgating schedule "LT," the Public Service Com-

mission acted in an arbitrary, capricious and unreasonable manner.

We have repeatedly held that this court will not "substitute its own discretion and judgment for that of the Public Service Commission where it has exercised its discretion in a matter over which it has jurisdiction . . . unless it be clearly shown that the order is unreasonable, arbitrary or capricious." *Greyhound Lines v. Ga. Public Service Commission,* 236 Ga. 76 (222 SE2d 347) (1976) (and authorities there cited). In support of their argument, appellants point out that this court has held that the rule against one council binding its successors in matters of municipal government, prohibited a city from leasing land to a hospital corporation for a period of thirty-five years. *Aven v. Steiner Cancer Hospital, Inc.,* 189 Ga. 126 (5 SE2d 356) (1939). This rule is not of statutory origin (see *Williams v. City Council of West Point,* 68 Ga. 816 (1882)), and the history of its application is somewhat uneven. See Sentell, Local Government and Contracts that Bind, 3 Ga. L. Rev. 546 (1969) and Sentell, Binding Contracts in Georgia Local Government Law: Recent Perspectives, 11 Ga. St. B. J. 148 (1975). However, the application of the rule of Code Ann. § 69-202 in the context of franchise contracts with public utilities was resolved in *City of Summerville v. Ga. Power Co.,* 205 Ga. 843 (55 SE2d 540) (1949). It was there held, that where the city charter granted the city council the power to grant franchises to public utilities, there was no violation of Code § 69-202. We see no meaningful distinction between the *Summerville* case and the instant case where the power to grant franchises stems from Code Ann. § 69-310 (e).

The Public Service Commission found that: "It is to the benefit of the company (and ultimately the rate payers who bear the burden of these franchise fees) to know that if it makes valuable improvements in a particular city, the company has a franchise which will extend for a definite period to protect that investment." As we said in *Allied Chemical Corp. v. Ga. Power Co.,* 236 Ga. 548, 551 (224 SE2d 396) (1976): "The process of setting rates is not required to follow any particular course, so long as the end result does not violate the 'just and reasonable'

requirement. . ."

We believe schedule "LT" meets this requirement. As appellees point out, schedule "LT" provides that municipalities and other political subdivisions may require franchise payments up to 4% of annual sales to residential and commercial users, and this expense to the power company would be spread throughout the system as a general operating expense. It is clear that the commission concluded that when a political subdivision chose to require a greater franchise fee than 4% of the residential and commercial sales, that the charge was excessive for the "use of the streets" and that it was therefore only fair that the excess be charged back to the residents of the political subdivision who would benefit from the increased franchise payments. It was also reasonable for the commission to conclude that if a political subdivision gave the company some *additional value*, apart from the "use of the streets," then the Georgia Power Company would be justified in spreading greater franchise payments (up to 4% of annual sales to residential, commercial, and industrial users), throughout the system as a general operating expense. The Public Service Commission in declaring that a 35-year fixed-term franchise was such additional value as would justify the inclusion of such higher franchise fees in operating expenses, recognized that "no one period of time" would work equally well in all cases, but found that "35 years is a reasonable time under all the circumstances." Appellants have failed to show that this determination is arbitrary, capricious, or unreasonable. Accordingly, the judgment of the trial court will be affirmed.

*Judgment affirmed. All the Justices concur.*

ARGUED NOVEMBER 9, 1976 — DECIDED FEBRUARY 9, 1977.

*Wilbur T. Fitzgerald, Walter E. Sumner,* for appellants.

*Robert J. Castellani, Troutman, Sanders, Lockerman & Ashmore, Jeffrey R. Nickerson, Ralph H.*

*Greil,* for appellees.