## A08A1326. UNIFIED GOVERNMENT OF ATHENS-CLARKE COUNTY et al. v. GEORGIA PUBLIC SERVICE COMMISSION et al.

(668 SE2d 296)

ELLINGTON, Judge.

This appeal arises from a decision of the Georgia Public Service Commission ("PSC") to reduce the amount of municipal franchise fees the Georgia Power Company may recover from its rate base from four percent of usage revenue to two percent of that revenue. A number of Georgia municipalities, the Georgia Municipal Association ("GMA"), and some Georgia Power customers (collectively, "the appellants") brought a petition for judicial review and declaratory relief in the Superior Court of Fulton County, which affirmed the PSC's decision. The appellants now contend that the PSC's decision was arbitrary and not supported by any evidence. We affirm.

Under OCGA § 50-13-19 (g), a superior court's review of an administrative proceeding "shall be conducted by the court without a jury and shall be confined to the record." OCGA § 50-13-19 (h) provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact," and that the court may "reverse or modify" the administrative decision if, inter alia, "substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . [a]rbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." OCGA § 50-13-19 (h) (6). "When this Court reviews a superior court's order in an administrative proceeding, our duty is not to review whether the record supports the superior court's decision but whether the record supports the final decision of the administrative agency." (Citation and punctuation omitted.) *Ga. Peace Officers Standards &c. Council v. Anderson*, 290 Ga. App. 91 (658 SE2d 840) (2008). We will affirm "if 'any evidence' on the record substantiates the administrative agency's findings of fact and conclusions of law." (Citations and punctuation omitted.) *Professional Standards Comm. v. Alberson*, 273 Ga. App. 1, 4-5 (1) (614 SE2d 132) (2005).

So viewed, the record shows that hundreds of Georgia municipalities have longstanding contracts with Georgia Power under which Georgia Power pays a municipal "franchise fee" in exchange for access to municipal roads and rights-of-way. Under a rate schedule for this local tariff, Schedule "LT," the PSC permits Georgia Power to include the franchise fee it pays to a municipality in its system-wide rate base so long as Georgia Power has received a franchise to operate in that municipality for thirty-five years and so long as the franchise fee does not exceed four percent of city usage

revenue for the preceding year.[1] The effect of Schedule "LT" is that Georgia Power's customers residing in unincorporated areas bear some portion of the costs of reimbursing Georgia Power for its expense in gaining access to city streets and rights-of-way.

In July 2005, the Cobb County Board of Commissioners and the Association of County Commissioners of Georgia petitioned the PSC to require Georgia Power to collect municipal franchise fees from municipal customers only. The GMA applied to intervene, and the PSC permitted it to do so. At a hearing before the PSC, the petitioners offered evidence, including expert testimony, that Georgia Power recoups approximately 45 percent of the municipal franchise fees it pays from customers residing outside any municipality. None of the approximately $112 million collected in this way was earmarked for any particular purpose, however, and no municipality has determined whether the amount of fees collected is commensurate with the cost of access and maintenance within city lines. Unlike two other Georgia utilities (AT&T and Cobb Electrical Membership Corporation), Georgia Power bills do not itemize the franchise fees, nor has Georgia Power otherwise put its nonmunicipal customers on notice that they are effectively subsidizing municipal budgets. Several other states now require that municipal franchise fees be recovered only from municipal residents.

After hearing from a variety of municipalities, customers, and representative organizations, the PSC issued an order on January 29, 2007. The PSC found that the "method and amount of cost recovery" from Georgia Power customers in unincorporated areas "is somewhat arbitrary and disconnected from a measured benefit." The PSC also pointed to testimony showing that "the franchise fee structure has evolved from one linked closely to the actual cost [to] municipalities for right-of-way maintenance or compensation for use of the roads into a general revenue source"; and that recovering a lower percentage of usage revenue through the rate base "might more realistically reflect the benefit" provided by the Georgia Power grid to nonmunicipal customers. Citing its exclusive authority under OCGA § 46-2-23 (a) to determine "just and reasonable" rates for electric service, the PSC then modified the franchise fee system as follows:

---

[1] For those few municipalities who charge Georgia Power a franchise fee greater than four percent, or who do not grant Georgia Power a thirty-five year franchise, Georgia Power may not recoup the municipality's entire fee by including the amount paid in its rate base. In such cases, the amount excluded from Georgia Power's rate base is charged back to customers within the city.

LAW LIBRARY

> During the calendar year 2007, Georgia Power shall continue to recover all franchise fees paid to municipalities entirely by inclusion of those amounts in its rate base if (a) the franchise fee is calculated as a percentage of electricity usage revenue annually within the city alone, (b) the rate does not exceed [four] percent of such usage[,] and (c) the city grants a franchise to [Georgia Power] for at least 35 years.

> During the calendar year 2008, Georgia Power shall collect that portion of franchise fees representing [three] percent of usage revenue entirely by inclusion of those amounts in its rate base, and shall collect that portion of franchise fees representing [one] percent of usage revenue exclusively from its customers located within the municipality to which such franchise fees are paid.

> Beginning January 1, 2009 continuing thereafter, Georgia Power shall collect that portion of franchise fees representing [two] percent of usage revenue entirely by inclusion of those amounts in its rate base, and shall collect that portion of franchise [fees] representing [two] percent of usage revenue exclusively from its customers located within the municipality to which such franchise fees are paid.

On appeal, the superior court affirmed the PSC and denied the petitioners' request for declaratory relief. The superior court also held that the municipalities lacked standing because they had not applied to intervene before the PSC as required by OCGA § 46-2-59. This appeal followed.

1. As a preliminary matter, we note that we reach the merits of this appeal because the GMA has standing.

OCGA § 46-2-59 (b) authorizes "[a]ny person on whom a statute confers an unconditional right to intervene" to do so "by filing a notice of intervention with the commission." Under subsection (c) of the same statute, "[a]ny other person desiring to intervene must file an application for leave to intervene within 30 days following the first published notice of the proceeding." See *Ga. Power Co. v. Campaign for a Prosperous Ga.*, 255 Ga. 253, 255-257 (1) (336 SE2d 790) (1985) (a party to a PSC proceeding does not have an automatic right to judicial review, but must show that it properly intervened in that proceeding and that it is "aggrieved" by the administrative decision as defined by OCGA § 50-13-19 (a)).

Although the trial court ruled that the municipalities did not have standing in the action, it is undisputed that the GMA timely

petitioned for leave to intervene and that the PSC allowed it to do so. Because GMA properly intervened, and because the remaining appellants joined the GMA's arguments in the superior court and do so again before this Court, we reach the merits of the appellants' arguments.

2. The appellants contend that the PSC's order was arbitrary and capricious and lacked evidence to support it. We disagree.

OCGA § 46-2-20 (a) vests the PSC with "general supervision" of "all . . . electric light and power companies"; OCGA § 46-2-23 (a) grants it the "exclusive power to determine what are just and reasonable rates and charges to be made by any person, firm, or corporation subject to its jurisdiction." Under this framework, the PSC's determination whether public rates are just and reasonable " 'is the making of a rule for the future, and therefore is an act legislative not judicial in kind.' " *Mut. Light &c. Co. v. City of Brunswick*, 158 Ga. 677, 682 (124 SE 178) (1924) (quoting *Prentis v. Atlantic Coast Line Co.*, 211 U. S. 210, 226 (29 SC 67, 53 LE 150) (1908) (Holmes, J.).

In *City of Lithonia v. Ga. Public Svc. Comm.*, 238 Ga. 339 (232 SE2d 832) (1977), the Supreme Court of Georgia rejected an attack by a number of cities on the same "LT" rate schedule under which the PSC decided this matter, and concerning the same four percent franchise fee the municipalities in this case now seek to preserve. Noting that "[t]he process of setting rates is not required to follow any particular course, so long as the end result does not violate the 'just and reasonable' requirement," the Supreme Court held that the PSC had the power to determine that any franchise fee greater than four percent of usage revenue should be "charged back to the residents of the political subdivision who would benefit from the increased franchise payments." (Citation and punctuation omitted.) Id. at 341-342 (2).

In this case, the PSC considered evidence that Georgia Power's longstanding practice of recovering franchise fees from its rate base in the amount of four percent of city usage revenue was inequitable both in relation to the cost of maintaining rights-of-way and in its application to both municipal and nonmunicipal customers. The PSC heard testimony to the effect that because Georgia Power pays franchise fees only to cities, and because the cities use the funds thus received to finance a wide variety of municipal services, it was no longer equitable to require nonmunicipal customers to pay their traditional share of the franchise fees.

> Neither the trial court, nor this court on review, will substitute its own discretion and judgment for that of the Public Service Commission where it has exercised its dis-

cretion in a matter over which it has jurisdiction, and neither court will interfere with a valid order of the Public Service Commission unless it be clearly shown that the order is unreasonable, arbitrary or capricious.

(Citations omitted.) *Greyhound Lines, Inc. v. Ga. Public Svc. Comm.*, 236 Ga. 76 (222 SE2d 347) (1976). The evidence before the PSC in this case formed a sufficient basis for its decision to reallocate the franchise fees so as to reduce the burden on non-municipal customers, and the GMA has failed to show that this decision was "arbitrary, capricious, or unreasonable." *City of Lithonia*, 238 Ga. at 342 (2). We thus affirm both the PSC's decision and the superior court's order. Id.

*Judgment affirmed. Ruffin, P. J., and Andrews, J., concur.*

DECIDED OCTOBER 2, 2008.

*Galloway & Lyndall, Newton M. Galloway,* for appellants.

*Thurbert E. Baker, Attorney General, Sidney R. Barrett, Jr., Senior Assistant Attorney General, Thomas K. Bond, Daniel S. Walsh, Alex F. Sponseller, Assistant Attorneys General, Sutherland, Asbill & Brennan, Randall D. Quintrell, Troutman Sanders, Kevin Greene, Knoerr & Emanuel, Mark D. Baxter, Jeffrey C. Stair, Kelli Laker Leaf,* for appellees.